HASHFIELD *v.* STATE OF INDIANA.

[No. 30,360. Filed October 6, 1965. Rehearing denied December 8, 1965.]

*Ferdinand Samper* and *Jack W. Broadfield,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Carl E. Van Dorn,* Deputy Attorney General, and *Thomas A. Hoadley,* Prosecutor for 10th Judicial Circuit, attorneys for appellee.

ACHOR, J.—This is an appeal by Emmett O. Hashfield, appellant herein, from the judgment of the Monroe Circuit Court convicting him of murder in the first degree and imposing the death penalty. Appellant, who had three times previously been convicted of sex offenses, raped, killed and dismembered an eleven year old girl, in Warrick County, and cast the remnants of her body into the Ohio River.

Appellant filed a plea of not guilty by reason of insanity, and pursuant to said plea the court appointed two psychiatrists who examined the appellant and testified regarding his sanity at the conclusion of the trial, as provided by Acts 1927, ch. 102, § 1, p. 268, being Burns' Ind. Stat. Anno. § 9-1702 (1956 Repl.).

At the request of the pauper counsel appointed by the court, the court also authorized the employment of three physicians by the appellant for his use in the preparation of his defense, their expenses to be paid by the state.

In his motion for new trial the appellant asserted one hundred and one [101] grounds in support thereof. However, on appeal he asserts only eight "points" or propositions of law as the basis of his argument. Some of these propositions combined several grounds asserted in the motion for new trial. Other grounds asserted in said motion are waived by reason of appellant's failure to here present any argument with respect thereto.[1]

Under his first point, appellant asserts that the court committed reversible error in that he overruled defendant's

---

1. Among the issues waived were: Search and Seizure, Specifications No. 1, 2, 7-72, 77, 78; Right to Counsel, Specifications No. 1, 2, 7-72, 77, 78; Access to Records, Specification No. 3.

motion for a continuance at the conclusion of the testimony of the court-appointed psychiatrists, for the purpose of obtaining expert medical testimony in rebuttal to their testimony. Appellant asserts that this failure to grant a continuance violated his constitutional rights under the Fifth and Fourteenth Amendments to the U. S. Constitution, and Article 1, §§ 12 and 13 of the Indiana Constitution.

In support of their argument counsel first directs our attention to the fact that prior to the trial they had sought an order from the trial court to permit appellant to examine the report of said court-appointed doctors, or in the alternative, to personally interrogate them. The motion was denied, as was a petition for writ of mandate filed with this court seeking the same relief. *State ex rel. Hashfield* v. *Warrick Cir. Ct.* (1961), 242 Ind. 318, 178 N. E. 2d 734.

Appellant then proceeds to assert that he was "surprised" by and therefore unprepared to rebut the testimony of said court-appointed witnesses who testified that in their opinions, although the defendant was at the time of their examinations, and at the time the offense was committed, a sexual deviate of a sociopathic personality group, he was nevertheless mentally capable of knowing right from wrong and of controlling his impulse to commit the crime with which he was charged and found guilty. In other words, in their opinion, he was legally sane. The term "legally sane" has been firmly established as a criterion to be considered in criminal prosecutions in this state.[2]

Specifically, appellant's attorneys assert that they were "surprised" and "unprepared" to meet the testimony of the court-appointed doctors for the reason that "the appellant's

2. Elements necessary to show insanity so as to relieve accused of criminal responsibility are set forth in Warren v. State (1963), 243 Ind. 508, 188 N. E. 2d 108; Whitaker v. State (1960), 240 Ind. 676, 168 N. E. 2d 212; Flowers v. State (1956), 236 Ind. 151, 139 N. E. 2d 185; Lykins v. State (1952), 231 Ind. 258, 108 N. E. 2d 270; Kallas v. State (1949), 227 Ind. 103, 83 N. E. 2d 769; cert. den. 69 S. Ct. 744, 336 U. S. 940, 93 L. Ed. 1098.

best indication of the probable opinion of the medical findings would have been the same as those of appellant's own medical experts whose testimony, appellant asserts, was contrary to that of the court-appointed doctors."

Because of the severity of the penalty imposed in this case, we have given thorough consideration as to whether there may have been reversible error upon this or any other issue raised by the defense.

Admittedly the granting or denial of a continuance is a discretionary matter to be exercised by the trial court. *Leise v. State* (1954), 233 Ind. 250, 118 N. E. 2d 731. Counsel in oral argument presented a strong and impassioned argument in support of their contention that under the facts of this case there was such an abuse of discretion by the court. However, after an exhaustive examination of the record, we find no foundation for appellant's contention, for several reasons.[3]

1. The prosecution, as a part of its case-in-chief, presented Dr. Charles Cruddex, the psychiatrist who stated that, in his opinion, although the defendant was a sociopathic personality with sexual deviations, he was capable of knowing right from wrong with respect to the particular act in question and of controlling his impulse to commit such act. Ferdinand Samper, as counsel for defendant, subjected Dr. Cruddex to a skillful cross-examination and re-cross examination, which comprises 67 pages in the transcript, without discrediting the doctor or altering his opinion as to the "legal sanity" of the accused.

2. The defense, in support of appellant's plea of insanity, presented Drs. Dwight Schuster and William DeMeyer as witnesses. Dr. Schuster, after a detailed report regarding his examination which covered a period of several weeks, merely testified: "I believe that he is not normal when it comes to

3. Rather, we are inclined to commend the judge for his judicious conduct in this prolonged and arduous proceedings.

sex." Thus his testimony could not be considered as even material as to the question of sanity or insanity of the accused.

Thus, it could only be upon the testimony of Dr. DeMeyer that the defense could base any claim as to surprise, because of the variance in the testimony of the medical experts. We therefore, consider the testimony of Dr. DeMeyer at length.

Dr. DeMeyer, an expert in neurology, testified that after an extensive examination of the accused for a period of several weeks during which X-rays of his brain were taken, he found a structural lesion "in the spot that [an] experienced experimenter would make lesions in animals in order to produce deviations in sexual behavior." He testified: "[W]e know this lesion is of sufficient size and nature that it would certainly interfere with his adaptabilities and would tend to magnify or exaggerate any personality deviations that might exist from terms of his life experiences and his emotional experiences." He would not state that because of the lesion the defendant was not capable of knowing right from wrong, and he further testified that he could not answer the question as to whether at the moment the thought came to the defendant to assault the child that he had sufficient will power to overcome the impulse. He stated: "To me that is nonsensical." Upon further interrogation he stated: "This is in the area of guess work and I can't say either way. If the man committed the act as charged then he didn't have the power to overcome his impulse. That's all I can say. . . ."[4] Dr.

_____

4. The testimony of Dr. DeMeyer follows the concept of McNaghten's Case (H. L. 1843), 10 Clark & Finnelly 200, 8 Eng. Rep. 718, which has been rejected in Indiana, as the basis for determining legal insanity. Reason therefor has been stated as follows:

"While it has been recognized that the science of psychiatry has made tremendous strides since that test was laid down in M'Naghten's Case, its progress has not reached a point where its learning would require elimination of the test on constitutional grounds. Moreover, it must be recognized that choice of a test of legal sanity involves not only questions of scientific knowledge but questions of basic policy as to the extent to which that knowledge should determine criminal responsibility. However, much criticism of the rule by psychiatrists, physicians, and jurists has been noted, based in part on recognition of

DeMeyer concluded his testimony by stating that after consultation with the two other doctors employed by appellant at state expense, they came to the conclusion: "Well, we call him a sociopathic [sic] personality disorder with sexual deviation as one of the factors." This is essentially the exact diagnostic conclusion reached by Dr. Cruddex as a witness for the prosecution. As previously discussed, we find no inconsistency in this testimony and that of the court-appointed doctors, Drs. Reitman and Crevello, also testified that the accused is a person with a sociopathic personality with sexual deviations as one of the factors, but that the accused was capable of knowing right from wrong and of controlling the impulse to do that which was wrong. We do not understand how counsel for accused can claim that they were "surprised" by reason of the testimony of the latter doctors.

3. Furthermore, we find little or no merit to counsels' contention that they were "unprepared" to refute the testimony of the court-appointed doctors. As previously noted, attorney Samper subjected Dr. Cruddex to cross- and re-cross examination which comprises 67 pages in the transcript. Also, we note that Jack Broadfield, also attorney for the accused and, according to his statement in oral argument, a former sociopathic consultant for the armed services, conducted an able and exhaustive cross-examination of Dr. Reitman, one of the court-appointed psychiatrists, which comprises 28 pages of the transcript. (Ferdinand Samper's cross-

---

the fact that there are persons suffering from mental disease who, although having the capacity to distinguish between right and wrong are unable to control their actions, and a number of courts have rejected the right and wrong test as an exclusive criterion of criminal responsibility. A few courts have rejected it in favor of the rule discussed supra § 58, that accused is not criminally responsible if his unlawful act was the product of mental disease or defect, but a larger number of courts have rejected it as an exclusive test by adopting the volitional or irresistable impulse test discussed infra § 61. Where the capacity to distinguish between right and wrong has been rejected as an exclusive test, while such capacity is no longer the earmark of legal sanity, lack of such capacity remains one of the earmarks of legal insanity and is a proper subject of inquiry." 22 C.J.S. Criminal Law § 59, p. 206.

examination of Dr. Reitman comprises 37 additional pages.) Interestingly, Dr. Reitman at one point commented: "I feel like I am giving a course in psychiatry." Mr. Samper undertook to cross-examine Dr. Crevello, another psychiatrist appointed by the court, whose testimony coincided with that of Drs. Cruddex and Reitman and did not conflict with that of Drs. Schuster and DeMeyer. After only a few questions Mr. Samper stated to the court: "I have no further questions Your Honor. Co-counsel has no way of cross examination of the doctor."

From this extensive examination of medical experts, both in direct and cross-examination, the court had reason to believe that counsel for the accused had come to the conclusion that they had not produced medical testimony which would sustain their plea of insanity and that their plea for extension of time was not based upon either "surprise" or "unpreparedness," but on the realization that, under all the testimony, they had failed to sustain their defense of insanity. The appeal has not seen fit to question the sufficiency of the evidence on the issue of insanity.

4. Another reason why we cannot say that the court abused its discretion in denying the motion for continuance is that appellant did not make his request for a specific period of time. In fact his motion almost constituted a refusal to commit himself as to the period of time desired. The jury had been locked up for nearly six weeks. Would it have been reasonable to release them for an indeterminate period, as suggested by counsel for the accused, while counsel, without any assurance that he could do so, attempted to find other evidence with which to refute the testimony of the court-appointed witnesses, which testimony, as previously noted, was not inconsistent with that of all the other evidence previously introduced?

Finally upon this issue, if the appellant was actually "surprised" by reason of the testimony of the court-appointed psychiatrists, he should have made this one of of the causes for reversal in his motion for new trial and should have

therein stated to the court just what credible evidence he could produce which would have affected the jury's verdict in event of a new trial.

Appellant, in his second point of argument, asserts that ■ the trial court erred in refusing his Instruction No. 22. The instruction is as follows:

"I instruct you that legal insanity is a question of fact for the jury, to be determined from the evidence as to its existence, its character, and its extent; and you are further instructed that actual insanity, however partial it may be, is, in Indiana, a defense."

This instruction was properly refused. It is true that the second section of this instruction which declares "that actual insanity, however partial it may be, is, in Indiana, a defense," finds some support in the case of *Sage* v. *State* (1883), 91 Ind. 141. In that case this court speaks of "insanity" however partial. However, five years later this court in *Warner* v. *State* (1888), 114 Ind. 137, 16 N. E. 189, in effect held that the reference to partial insanity was dicta and that the case of *Sage* v. *State, supra,* concerned another matter. The Warner case removed all doubt concerning partial insanity by upholding the trial court's refusal to give an instruction which said that actual insanity, however partial, is a defense. See: 8 I. L. E. Criminal Law § 8, p. 82.

The rule in the Warner case, *supra,* is sound, since mere mental disease, mental defect, or weakness of intellect, which, to a layman, might be described as "partial actual insanity," will not provide the defense of insanity in this state because any of these characteristics might be present—and still not constitute *legal* insanity. *Flowers* v. *State* (1956), 236 Ind. 151, 139 N. E. 2d 185; *Conway* v. *State* (1889), 118 Ind. 482, 21 N. E. 285.

Therefore, the trial court's reference to "actual insanity, however partial it may be," could only tend to confuse the jury on the issue presented. An instruction which is apt to mislead or confuse the jury should not be given. *Miller* v. *State* (1944), 223 Ind. 50, 58 N. E. 2d 114. Other portions

of the instruction which correctly state the law were given to the jury in other instructions.

Appellant in the third point of his argument alleges that the trial court erred in refusing to give defendant's tendered instruction number 30. This instruction is as follows:

> "I instruct you that a crime or criminal offense is a willful act for which the law prescribes a penalty, enforced by the State by a person who is criminally responsible and who has in doing such wilful act a criminal intent. Criminal intent is willful intentional conduct to commit an act prohibited and made punishable by the Indiana Legislature, which prohibition and punishment rests primarily on the moral rightfulness of the punishment inflicted as based on the principle of reformation, not vindictive justice."

The instruction does not correctly state the law and it, also, would have been confusing to the jury. The clause in the second sentence, "Criminal *intent* is willful intentional *conduct*" does not correctly state the component elements of the crime, which are both an evil intent and an overt act. *Markiton* v. *State* (1957), 236 Ind. 232, 139 N. E. 2d 440. Later, in the same sentence, another erroneous clause follows: "prohibition and punishment rests primarily on the moral rightfulness of the punishment inflicted." In *State ex rel. Johnson* v. *White Circuit Court* (1948), 225 Ind. 602, 606, 77 N. E. 2d 298, 300, this court stated as a general proposition:

> "'Penal justice, rests primarily on the moral rightfulness of the punishment inflicted. . . .' 1 Wharton's Criminal Law (12th Ed.), pp. 10, 11, § 10."

However, this statement is clearly no authority for the legal proposition stated in the instruction that "prohibition and punishment rests primarily on the moral rightfulness of the punishment inflicted." Neither prohibition nor punishment rests on the moral rightfulness of the punishment except as related to sociological objectives, but comes about as the result of the legislative determination. The instruction is erroneous further in that it states that "prohibition and

punishment rests . . . on the principle of reformation, not vindictive justice."

Although Art. 1, § 18 of the Indiana Constitution provides that the *penal code* shall be founded on the principles of reformation and not vindictive justice, the death penalty in a murder case has been held not to be vindictive justice under this section of the constitution. Rather, it is stated that the death penalty for murder in the first degree is "even-handed justice" and not vindictive justice. *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79; *McCutcheon* v. *State* (1927), 199 Ind. 247, 155 N. E. 544. Therefore, this portion of the instruction would have been confusing, if not misleading to the jury.

As a fourth point of his argument, appellant asserts that the trial court erred in refusing to give appellant's tendered instruction number 32. This instruction was as follows:

> "The Court instructs you that dismemberment or other acts upon a dead body are not to be considered by you as proving murder in the first degree, second degree, or manslaughter, and that such crimes may be committed only upon a live human being: if you find that the deceased was dead at the time of dismemberment or other acts that the Court now instructs you that no crime per se for such acts is charged in the indictment or in the statutes of the State of Indiana proscribing the crime of murder in any degree."

In reply the appellee cites numerous cases in this state and the federal courts that such acts are a subject proper for the jury to consider. *Oldham* v. *State* (1946), 224 Ind. 150, 65 N. E. 2d 414; *Davidson* v. *State* (1933), 205 Ind. 564, 187 N. E. 376; *Rivers* v. *United States* (9th Cir. 1959), 270 F. 2d 435, 438.[5]

5. "It is well settled that the conduct of an accused person following the commission of an alleged crime may be circumstantially relevant to prove both the commission of the acts charged to the accused and the intent and purpose with which those acts were committed. Among such acts are flight of the accused and concealment of the results of the crime. Allen v. United States, 164 U. S. 492, 499, 17 S. Ct. 154, 41

Under point 5 of appellant's argument he assigns as error the following cause of his motion for new trial:

"80. Error of law occurring at the trial, in this, to-wit: That the Court erred in overruling the defendant's questions and offer to prove, through Dr. Dwight W. Schuster, questions and answers of the defendant and the witness during the defendant's examination by the witness at Indianapolis, which questions to the witness and offer to prove were offered for the limited purpose of stating the basis of his expert medical opinion, which questions and answers, dated December 22nd, are marked Exhibit A and attached hereto and made a part hereof by this reference."

The ground for new trial attempted is not clear and the reading of appellant's brief provides little help in the matter.

It would appear that appellant's argument is based on the trial court's refusal to allow into evidence the question and answer session between Dr. Schuster and appellant, which colloquy appellant claims should be admitted into evidence to explain the basis of the doctor's expert opinion. Assuming that this is the purpose of appellant's contention, we conclude that it is without merit, first, because as previously

L. Ed. 528; Bird v. United States, 187 U. S. 118, 131, 23 S. Ct. 42, 47 L. Ed. 100; Strom v. United States, 9 Cir., 50 F. 2d 547, 548. Cf. Lutch v. United States, 9 Cir., 73 F. 2d 840, 841, and United States v. Heitner, 2 Cir., 149 F. 2d 105, 107. It is plain that the jury could well infer from the evidence in this case that the dismemberment of the body and the throwing of the portions into the sea were done to conceal a murder or to avoid its detection. This would be particularly true of the acts disposing of the finger tips. Such an act would serve the purpose of avoiding identification of the body. Since the photographs would tend to disclose just how the dismemberment was accomplished, examination of the photographs would give some enlightment as to the defendant's probable state of mind and purpose in performing these acts—whether it was done wildly, or in a calculated manner. These considerations disclose the relevancy and probative value of this portion of the evidence.

Of course appellant might argue that the dismemberment was as corroborative of her story of panic on discovery of an accidental death, but we must recall that it was the function of the jury to determine whether they believed such story. The mode and thoroughness of the dismemberment would have significance and relevance in permitting the jury to weigh the credibility of the story which the defendant told on the stand; and to decide under all the circumstances whether the effort to conceal a murder was not the more probable answer as to the purpose of dismemberment."

Rivers v. United States (9th Cir. 1959), 270 F. 2d 435, 438.

noted, the doctor expressed no opinion as to the sanity issue in question. We are, therefore, unable to understand how appellant was in anywise harmed by reason of the refusal of the court to admit evidence as to the colloquy had by an expert witness upon which he expressed no opinion.

Furthermore, since Dr. Schuster was appellant's own witness, these questions and answers would have been inadmissible because they were made at a time subsequent to the charge and were self-serving in character. *Spencer* v. *State* (1958), 237 Ind. 622, 147 N. E. 2d 581.

Under point 6 appellant assigns as error the admission of unspecified testimony of Sgt. Wayne Stalcup and Dr. Roger Bisenett and the admission of State's Exhibit No. 8, over the objection of the appellant.

No question is presented concerning the admission of the testimony above referred to, since the motion for new trial fails to set forth the questions, objections or answers. *Prophet* v. *State* (1960), 241 Ind. 57, 168 N. E. 2d 189; *Henderson* v. *State* (1956), 235 Ind. 132, 131 N. E. 2d 326. Furthermore, no question is presented on appeal as to State's Exhibit No. 8, since the motion for new trial fails to set forth the appellant's specific objection or the trial court's ruling. *Prophet* v. *State, supra; Gernhart* v. *State* (1954), 233 Ind. 470, 120 N. E. 2d 265. Appellant presents the same argument as to State's Exhibit No. 9 which is subject to the same deficiencies.

Notwithstanding counsels' failure to properly present these issues for the technical reasons stated, because of the maximum penalty imposed in this case, we will consider the issues as if they were properly raised.

Appellant's objection to the evidence in the admission of the exhibits above referred to, is grounded upon the fact that appellant was removed from the Warrick County jail, in which county the crime was committed, to the Evansville State Police post soon after his arrest. He

asserts that this action constituted a violation of a constitutional right to remain in the Warrick County jail, and therefore the evidence procured at the Evansville State Police post, and entered against him, constituted reversible error.

As authority for this proposition appellant cites the case of *Dearing* v. *State* (1951), 229 Ind. 131, 95 N. E. 2d 832, in which this court recited numerous acts by public officers, including the denial of counsel and the acceptance of a plea of guilty within two hours after the charge was found against him, and that a state police officer who arrested the defendant took him to the state police post for incarceration and imprisonment instead of to the county jail where the charge was pending against him, all of which was said to constitute "a violation of the appellant's constitutional right." The opinion does not indicate what constitutional right was violated by reason of the detention of the accused at the state police barracks. Furthermore, we note that in the case of *Joseph* v. *State* (1957), 236 Ind. 529, 141 N. E. 2d 109, this court held that the only issues properly presented in the *Dearing* case, *supra*, were the validity of the bench warrant and the right to counsel. Although proper procedure dictates that upon the arrest of an individual apprehended for a crime, he should be taken to the jail in the county where the crime was committed, for trial or for bail, this is not a constitutional right which must be strictly complied with under all circumstances. In the instant case, the appellant was taken to the county jail but was thereafter taken to the state police post at Evansville for his own safe keeping.[6]

Although while appellant was retained at the Evansville police post he was fingerprinted, and pictures were taken of

---

6. The county seat of Warrick County is Booneville which has a population of 4,801 (1960 census) and a jail with limited security facilities. It is uncontradicted that a mob had gathered outside the jail which was infuriated by reason of the henious crime which appellant was believed to have committed. It is to be noted that in the record there appears a motion to suppress evidence of a confession made by appellant on the ground, among other things, that he was influenced in making his confession by reason of fear of violence from the mob outside the jail, which issue is not argued on appeal.

scratches on his chest, and he engaged in conversation with one of the police officers, we find no basis upon which to sustain appellant's contention that this evidence was inadmissible. The photographs could have been taken in the Warrick County jail, and since the conversation which the witness testified to was admittedly a voluntary conversation, we find no reason to hold that it should have been excluded on constitutional grounds or otherwise. Actually, appellant has not shown how he was in anywise harmed by the admission of the testimony and exhibits which are at issue in this point of argument. Appellant's constitutional argument, if correct, would also serve to declare unconstitutional the safe-keeping of prisoners, Acts 1937, ch. 157, § 1, p. 841, being Burns' Ind. Stat. Anno. § 9-1046 (1956 Repl.).

In Point 7 appellant asserts that the court committed reversible error by reason of its failure to admit into evidence two X-rays of a normal skull, four "pictures" of cross-sections of a normal human brain, and two chalk drawings of brains.

Appellant has waived any error as to this point in that he has failed to specifically state what said purported exhibits were intended to prove or not prove, or set out the specific objections of the state or the substance thereof in the motion for new trial.

The rule for admission of X-rays in Indiana seems to be twofold. First, the individual X-ray must be properly authenticated. Secondly, the competency of the X-ray photographer must be shown before the X-ray is admissible. The X-rays in question were not so authenticated and therefore the discretion of the trial court was not placed in issue. *Randolph* v. *State* (1954), 234 Ind. 57, 122 N. E. 2d 860; *Gulf Research Development Co.* v. *Linder* (1936), 177 Miss. 123, 170 So. 646.

Furthermore, appellant was not harmed by the court's refusal to admit certain exhibits into evidence (a) because he was permitted to bring out this issue of comparing appellant's brain and skull to a normal brain and skull through

the testimony of the defense expert witness, *Dobbs* v. *State* (1957), 237 Ind. 119, 143 N. E. 2d 99, and (b) because the so-called normal brain and the skull and the abnormalcy of the appellant's brain are not the issue here. Sanity or insanity is the issue. The expert witness, Dr. DeMeyer who, presumably at appellant's direction, had caused these X-rays to be taken and who would have made the chalk drawings requested by appellant, stated emphatically that he could not express an opinion as to the legal sanity of the appellant at the time of the offense was committed on the basis of his study. If he as an expert could not express an opinion as to the legal sanity or insanity of the appellant on the basis of this demonstrative evidence, there is no reason to believe that the jurors, who were not experts, would be more qualified to do so than the expert himself.[7]

Under Point 8 appellant argues that the trial court committed reversible error when it overruled his motion for additional time for final argument to the jury. The argument is without merit. The matter of time allotted by the trial court for argument to the jury is within the sound discretion of the trial court. *Wheeler* v. *State* (1902), 158 Ind. 687, 693, 63 N. E. 975; *Cromer* v. *State* (1898), 21 Ind. App. 502, 508, 509, 52 N. E. 239.

In this case, counsel for appellant and the state conferred with the judge in his chambers with respect to the time to be allotted for oral argument, and thereafter the court stated that three hours would be allotted to each side. Appellant made no objection to this allotted time. Furthermore, it was agreed that since appellant was represented by two attorneys, they could divide their time as they saw fit. It was their agreement that they would share time equally. However, it

---

7. Most of the cases which have considered the exclusion of demonstrative evidence as error have been civil cases for damages in which a physical comparison can be made between the normal and abnormal condition of the human body caused by some injury, and the resulting effect can be comprehended with reasonable certainty by members of the jury. Clearly these facts are not applicable to the present case.

developed that the attorney who first argued for the defendant consumed more than his allotted hour and a half and now the other attorney complains that he was restricted in his argument to one hour and fifteen minutes, which was the remainder of the three-hour period allotted.

Abuse of discretion is in no way indicated. This is particularly true since counsel for appellant does not allege or argue that they used all of their three hours allotted to them and required additional time.[8]

Judgment affirmed.

Arterburn, Landis & Myers, JJ., concur. Jackson, C. J., concurs in the result.

NOTE.—Reported in 210 N. E. 2d 429.

---

8. On oral argument, it was established furthermore, that the attorney so complaining did not even use all of his allotted time.