DALLAS WAYNE HOWARD *v.* STATE OF INDIANA.

[No. 1174S226. Filed March 4, 1976.]

*Barrie C. Tremper,* Allen County Public Defender, of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

DeBruler, J.—Appellant, Dallas Wayne Howard, was charged by information with one count of first degree murder (murder in the perpetration of a robbery), Ind. Code § 35-13-4-1, Burns § 10-3401 (Supp. 1975), and one count of second degree murder, Ind. Code § 35-1-54-1, Burns § 10-3404 (Supp. 1975). In a trial by jury, appellant was found guilty of first degree murder and sentenced to life imprisonment. He filed a motion to correct error which was denied.

On appeal, appellant raises seven issues: (1) the sufficiency of the evidence to support the jury's verdict; (2) to (5) the admissibility of six photographs; (6) the admissibility of an X-ray; and (7) the admissibility of a hypothetical question and the medical opinion expressed in answer to it.

We will consider first the allegation that the evidence was insufficient to prove first degree murder. Appellant makes no arguments in this section of his brief and, at no point in his brief, sets out the circumstances of the crime. The State has set out the circumstances and related them to the elements of felony murder. We also have read the record of the evidence introduced at trial, so that this question could be considered now, rather than waiting for a post-conviction petition.

The felony murder statute reads in relevant part:

"Whoever kills a human being . . . while perpetrating or attempting to perpetrate a robbery . . . is guilty of murder in the first degree." Ind. Code § 35-13-4-1, Burns § 10-3401 (Supp. 1975).

The robbery statute reads in relevant part:

"Whoever takes from the person of another any article of value by violence or putting in fear is guilty of robbery." Ind. Code § 35-13-4-6, Burns § 10-4101 (1956).

Considering these statutes together, the State had to prove beyond a reasonable doubt that: (1) a human being (2) had been killed (3) by appellant (4) while he was taking or attempting to take (5) from a person (6) an article of value (7) by violence or putting in fear.

There was substantial evidence of probative value to permit the jury to find that each of these elements were present in this crime and to identify appellant. On November 10, 1973, at 2:00 p.m., the manager of a liquor store was shot. He died at 4:00 p.m., from internal bleeding as a result of that gunshot wound. The person who shot the manager had pulled out a small gun and demanded the money in the cash register. He said, "This is a stick-up. Hand me that money over there." The store manager handed him some bills, which he took. When he asked for the rest of the money, the manager told him to come around the counter and get it. When the robber walked around the counter, the manager hit him and knocked him off balance. As he grabbed him, the robber shot him just below the breastbone in the center of his body. The two continued to struggle from behind the counter to the front door, where they were observed struggling just before the manager collapsed. Exactly how much money appellant succeeded in taking is uncertain, but the amount still missing after citizens collected $205.00 in bills, which were on the pavement in front of the store, was $184.09.

As to the identity of the robber, none of the eyewitnesses to the crime could positively identify him. Several described

him as wearing blue denim pants and a blue denim shirt. One described his very small mustache. Several described the vehicle which he got into after leaving the liquor store as purple, as a Ford Econoline Van, and as having a small trailer behind it. Two women followed the van in their car and copied down the last three digits of the license plate. This report was put on the police radio, and a policeman testified that the digits were either 46T or 47T.

Appellant arrived at a friend's house a little while after the shooting. He told her that he had held up a liquor store in Fort Wayne and had shot a man. He showered, shaved off his mustache, and changed his clothes at her house and put the clothes he had been wearing when he arrived there and the small gun he had shown her in a paper sack. He asked her to help him hide his van. She called a friend, and appellant and a few other people drove to an abandoned gravel pit near the other person's house. Appellant put the paper sack between the seats in the front, and his friend put it behind the driver's seat. He locked the van and left it at the pit.

The friend then called the police when appellant was gone. She told them where he was and where the van was. The buttons on the denim shirt appellant had put in the paper sack matched two buttons found at the liquor store. Two buttons were missing off the front of the shirt. Light blue denim pants were in the sack also. The bullet taken from the manager's body was compared microscopically with the bullets shot from both of the barrels of the gun found in the paper sack. The comparison showed that the bullet which killed the manager was shot from barrel number two. The gun in the sack was registered to appellant and had been purchased fifteen days before the robbery-homicide. The van was a purple Ford with license number 69547T. Appellant had $103.00 in his wallet when he was taken to the county jail. Some of the bills had blood on them.

We conclude that the evidence concerning each of the elements of felony murder (robbery) and the evidence identifying appellant as the person who robbed and killed the store manager was sufficient to permit the jury's verdict.

We consider next the admissibility of the six photographs. Appellant objects to Exhibits Nos. 6 and 7, black and white photographs of the front exterior of the Variety Liquor Store, in which the homicide occurred. Appellant's trial objection was that they were irrelevant and cumulative. We would disagree. A photograph of the exterior of the store would aid the jury in visualizing what had been or would be described concerning the path the victim and appellant took to the door of the store, where certain evidence was found after the homicide, and how eyewitnesses would have viewed the scene from the street.

Concerning the allegation that the photographs were cumulative, appellant elaborates in his brief. He points to the following photographs which had been introduced earlier: a floor plan of the interior and exterior of the store, a close-up of the front door with the window glass broken out, a close-up of a corner of the doormat with a bracelet on it, a close-up of a bullet on the concrete outside the store, and a close-up of a button on the concrete. None of these photographs shows the exterior of the store as it would appear from the street or in the parking lot. The photographs of the front of the store are neither irrelevant nor cumulative.

Exhibit No. 43 is a color photograph of a brown paper sack surrounded by many other items, which was identified as the paper sack which the police found behind the driver's seat in appellant's van and which contained clothing and a gun. Appellant argues that this photograph, also, is irrelevant and cumulative. The photograph shows the sack in its original location behind the driver's seat of appellant's locked van, in a gravel pit where witnesses said

he had hidden it. The sack contained incriminating evidence of appellant's guilt. The photograph showing its location was certainly relevant.

In his brief, appellant explains why he believes the photograph was cumulative. Other photographs of the clothing and of the gun had been introduced earlier. Clearly those photographs did not make cumulative a photograph of the sack which contained the items and which showed where they were found.

Exhibits Nos. 44 and 45 were color photographs of the interior of the front door on the driver's side and of the dashboard and steering wheel of appellant's van. Both photographs show blood stains. Appellant argues that these photographs also were cumulative. At trial, he objected because they were irrelevant. The blood stains make it more probable that appellant did have blood on his hands or clothes for some reason. Bloodstains near the driver's seat also support the eyewitness testimony that appellant left the scene of the shooting in his van. The photographs are relevant. Appellant does not point to any other similar photographs previously introduced, so that these photographs are not cumulative.

Exhibit No. 46 is a color photograph of the shirt found in the paper sack in appellant's van with two buttons missing and of two buttons found at the crime scene. The photograph shows the two buttons next to the places where the buttons are missing and other buttons still on the shirt. At trial, appellant objected that the photograph was not the best evidence in the case. Rather two earlier exhibits, a black and white photograph of the buttons and a black and white photograph of the front of the shirt were the best evidence. The "best evidence" rule requires production of the original writing when the terms of the writing are material. McCORMICK, EVIDENCE § 230 (1972).

In this case, the evidence objected to did not involve any writing.

In his brief, appellant argues also that this photograph was cumulative. He points to the same two black and white photographs alluded to at trial and to the close-up photograph of a button lying on the concrete. Clearly, none of these photographs makes possible the visual comparison of buttons to buttons on the shirt and of thread in the buttons to torn places in the shirt. This photograph is not cumulative.

Appellant objected at trial to the admission of an X-ray showing the location of a bullet between the victim's vertebrae, on the grounds that the X-ray was irrelevant and that it was not the original X-ray consulted by the surgeon who was testifying. An X-ray showing a bullet in the victim's body contributes to a determination of the cause of death. The X-ray was relevant also to support the conclusions drawn by the surgeon. The surgeon was the first doctor to see the victim after he was hit by a bullet. The X-rays were taken while the victim was in the emergency room, and the developed X-rays were immediately brought to the surgeon. He based his diagnosis of the victim's condition on the location of the bullet and on his state of shock and lack of blood pressure. The surgeon testified that he determined that the bullet must have struck the aorta, causing great loss of blood. Appellant did not object to this testimony which preceded the State's introduction of the X-ray.

Appellant's second trial objection was that this X-ray was not the original. The surgeon testified:

> "It is the original in that this is a cut down version of the original. When I say cut down, the other X-ray was much larger. This has all the detail, but the outside versions has been cut away."

This testimony makes it evident that there was another larger X-ray showing the entire region of the wound. This X-ray

is a portion of that original X-ray, with the important vertebrae centered and the irrelevant bones and organs excluded. The process and result here are similar to taking a photograph, using the negative to make an enlarged photograph, and then introducing only the relevant portion of the photograph. As long as the portion introduced is not distorted or misleading, the evidence would be admissible. It is a portion of the original.

In his motion to correct error, appellant objected to the admission of the X-ray because it was not authenticated. The X-ray was identified by the name of the victim and the name of the hospital. The surgeon stated that the hospital X-ray personnel took the X-rays in the emergency room while he was there and returned immediately with the developed X-rays. The X-ray exhibit showed the same image of the victim's vertebrae and the bullet which the surgeon had seen that day. The X-ray was properly authenticated.

In his brief, appellant cites *Hashfield* v. *State*, (1965) 247 Ind. 95, 210 N.E.2d 429, which stated, without citation, that an X-ray was admissible in Indiana if it was properly authenticated and if the X-ray photographer was shown to be competent. Since the X-ray in the *Hashfield* case was not so authenticated, the discretion of the trial court (in refusing to admit the X-ray) was not placed in issue. 247 Ind. at 109. The second issue, of competency of the X-ray photographer, has been resolved by many courts thus: If the X-ray was taken by a regular X-ray technologist in a hospital, that proof is a sufficient showing of the competence of the operator and the reliability of the X-ray machine. As one court has stated:

"Modern day hospital practice is such that the radiologist very likely does not see the patient, the treating doctor is not present when the X-rays are exposed or read, and he may well rely heavily upon the radiologist's report in diagnosing and treating his patient's condition. X-rays are made with proper identifying marks and the trained radiologist can determine from the film itself as to whether the

exposure is proper and the film diagnostic. When these safeguards are accepted in the hospital, we see no reason why they should not be similarly accepted in court, particularly in the absence of any specific objection to the identity of the exhibit." *Banks* v. *Bowman Dairy Co.,* (1965) 65 Ill. App. 2d 113, 212 N.E.2d 4, 6.

Had the question of competency been raised at trial, absent a specific objection to the quality or reliability of the X-ray, we would find proof of the X-ray's having been taken by regular hospital X-ray technicians adequate to show their competence.

The next error alleged was the overruling of appellant's objection to a hypothetical question posed to the surgeon and answered by him. The State asked:

"Doctor, I will ask you if a person, having received the type of wound that you observed to Mr. Spahiev, could go on and engage in strenuous activity for a limited period of time."

The surgeon replied that it was possible and explained in what instances and why.

When an expert witness answers a hypothetical question, it is important that the jury know what facts he accepted as true for the purpose of answering the question. Secondly, those facts must be in evidence, because otherwise the hypothetical situation will be, at best, irrelevant, or, at worst, misleading and prejudicial. Here, the facts concerning the type of wound were in evidence. Appellant argues that the facts concerning the victim's having engaged in strenuous activity after receiving the wound were not in evidence at this point. The State does not answer the timing question; the evidence noted in its brief was introduced in later testimony. Certainly that later testimony did show that the victim struggled with appellant from the place where he was shot to the front door where he collapsed.

May this evidence be introduced after the hypothetical question has been posed and answered? Appellant argues in his brief that "through this means the State was permitted

to place before the jury evidence which was both highly inflammatory and prejudicial to appellant." Only if the State had introduced no evidence of the victim's strenuous activity could this assertion of misuse of the hypothetical question possibly stand. In this case, there was physical evidence from which the struggle could be inferred and eyewitness testimony concerning the victim's location at the counter when he was shot and his struggle with appellant at the doorway before he collapsed. The State did not use the hypothetical question as an "evidentiary harpoon," to put before the jury inadmissible evidence. The evidence to support the second part of the hypothetical question was introduced later in the trial.

While the significance of the question would not have been so clear to the jury before they had heard the evidence of strenuous activity, we cannot see that appellant was harmed by the evidence being presented only later in the trial. Had the evidence of a struggle not been introduced at the end of the State's case, the defense could have moved to strike. If no evidence is ever produced, and the question was prejudicial, for example, implying that appellant did something there was no evidence he did, the misuse of the hypothetical question could require reversal. To avoid confusion or prejudice, the trial court, in the exercise of its discretion, may require that the evidence be introduced before the hypothetical question is posed.

We find no error and affirm the conviction.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 342 N.E.2d 604.