**Daniel MAEZ, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 20A04–8801–CR–28.**

Court of Appeals of Indiana,
Fourth District.

Dec. 1, 1988.

Lee F. Mellinger, Elkhard, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant-appellant Daniel Maez, convicted by jury of robbery while armed with a deadly weapon, appeals and raises the following issues:

1. Did the trial court err in conducting Maez's trial *in absentia?*

2. Did the trial court err by commenting during voir dire concerning Maez's failure to testify, and in instructing the jury in preliminary and final instructions concerning Maez's failure to testify?

3. Did the trial court err in giving incomplete and confusing final instructions on the doctrine of reasonable doubt and the jury's duty to determine the law and the facts?

4. Did the trial court err in allowing the jury to have with them, during deliberations, jury instructions that had been marked upon and which contained case citations?

5. Was Maez denied effective assistance of trial counsel as a result of said counsel's failure to object to a trial *in absentia* or to request a continuance, or to object to comments or instructions concerning appellant's failure to testify, or to object to confusing, incomplete, marked or annotated instructions?

We affirm.

## FACTS

The evidence at trial most favorable to the State as revealed in Maez's brief and adopted by the State is as follows:

"On or about April 14, 1985, a lone young man, carrying a duffle bag and

motorcycle helmet, entered the Ponderosa Steakhouse located on Nappanee Street in Elkhart, Indiana. This individual engaged several of the store's employees in conversation and due to the nature and number of questions he asked, the managers on duty became suspicious. The managers requested a patron to keep an eye on the individual while he remained in the store.

Shortly before closing time, after finishing his order, this individual used the restroom, asked some more questions and then left. The managers' concern regarding this individual had been so heightened that immediately upon his departure the doors were locked and the police contacted.

The police arrived and checked the premises; found nothing out of order and departed. Shortly thereafter, despite the store supposedly being locked, this same young individual reappeared in the store brandishing a pistol. This individual accosted one of the store managers, who was at the cashier station, and ordered her into the office where the other store manager was working on the books. Once inside the office, the robber ordered the safe opened and while pointing a gun at the managers stuffed money from the safe into his pants. The robber then proceeded to leave, at which time other employees observed him leaving the scene on a motorcycle.

The police were called and their investigation revealed a duffle bag in the restroom that had previously been seen in the possession of the individual who had earlier been in the store.

Shortly after the incident one of the managers was able to place the face of the individual who had robbed the store as a former employee of the Ponderosa chain with whom she had attended a seminar several years before. This information was conveyed to the police, identifying the suspect as the Appellant, Daniel Maez. At about the same time the police received an anonymous tip identifying Daniel Maez as the perpetrator of the robbery.

Local police agencies were notified and on April 16, 1985, Maez was detained by Mishawaka Police Department. At this time [Maez] was found to be in possession of a key to a motorcycle.

Trial was commenced on December 1, 1986, at which time [Maez] was not present. Detective Art Kern testified concerning his investigation and the receipt of an anonymous tip naming [Maez] as the party responsible for the robbery. Detective Kern also identified the photo line up which was presented to the victims of the crime.

One of the store's managers, Melissa Bragg, testified concerning the events leading up to, and the robbery itself. She testified as to Maez's having a gun, and its use in the robbery. Her testimony regarding the gun was corroborated by witnesses Smith, Jon Strode, and Pletcher. Ms Bragg also testified as to her identification of the robber, and her prior meeting of [Maez] at a seminar. The identification of Maez as the robber was corroborated by witnesses Smith, Witmer, Lakes, and Pletcher.

The other manager, Regina Smith, testified concerning the robbery and the fear she felt during the robber's demand for money. This was corroborated by witness Bragg, and Jon Strode.

Witness Gary Dotson, the store supervisor, testified as to the amount of money taken in the robbery.

Witness Robert Blanche identified [Maez] as a former employee of the Ponderosa chain.

And, finally, witness David Riggle testified that he was present prior to the robbery because his friend, [Maez], had told him he was going to commit a robbery. Mr. Riggle also testified that Maez confessed to him, and that he had seen [Maez] with a drawer full of money after the robbery. Mr. Riggle also identified the duffle bag found at the scene as one he had loaned [Maez].

At the conclusion of the evidence, the jury deliberated and found [Maez] guilty of Robbery While Armed With a Deadly

Weapon. Accordingly, the Trial Court sentenced [Maez] to ten (10) years."
Appellant's Brief, pp. 3–6.

## DECISION

### I. *Trial in Absentia*

■ Maez did not appear at his trial. The case was presented to the jury in his absence. He claims fundamental error occurred and requires reversal.

We note by way of background that Maez originally informed the court at his arraignment that he desired to employ private counsel. He never did so and the court eventually appointed the public defender to represent him. During the pendency of the action, Maez failed to appear for proceedings on February 27, 1986 and on November 20, 1986, and bench warrants for his arrest had to be issued. On December 1, 1986, the public defender moved to withdraw his appearance due to Maez's failure to communicate with him to prepare his defense. The court denied the motion. Maez had been informed of the trial setting both orally and in writing.

Maez cites several federal cases which support the proposition that the mere failure to appear at trial does not constitute a waiver of his constitutional right to be present at trial. *U.S. v. Tortora* (2nd Cir. 1972) 464 F.2d 1202; *Smith v. United States* (5th Cir.1966) 357 F.2d 486; *U.S. v. Benavides* (5th Cir.1979) 596 F.2d 137.

The State counters with the fact that Maez's counsel did not object to the court conducting the trial *in absentia* and this constitutes a waiver of the issue, citing *Bowens v. State* (1985), Ind., 481 N.E.2d 1289. The State also points out that Maez concedes in his brief that the current status of the law on this issue in Indiana does not support his position. The State cites *Carter v. State* (1986), Ind., 501 N.E.2d 439, 440 where our supreme court stated the rule as follows:

"The rule is that the defendant must be personally present at every critical state of the proceeding unless he knowingly and voluntarily waives that right. *The continued absence of a defendant who knows of his obligation to be in court, when coupled with a failure to notify the court and provide it with an explanation, constitutes a knowing and voluntary waiver.*

Here, the record reveals that the appellant was personally advised of the trial date. He did not notify the trial court nor provide it with an explanation of his absence. Consequently, he knowingly and voluntarily waived his right to be present at trial. (citations omitted) (emphasis added)

The State points out that Maez had been advised of the trial setting orally and in writing. He had a history of ignoring the court proceedings, having twice failed to appear and failing to engage private counsel as he stated he would.

We find, under the authority of *Carter*, that Maez voluntarily and knowingly waived his constitutional right to be present in court.

### II. *Instructing the Jury on Maez's Right Not to Testify*

■ During the voir dire of the jury and in the court's preliminary and final instructions, the court informed the jury that the defendant was presumed to be innocent, was not required to prove or explain anything, and that the burden of proving guilt beyond a reasonable doubt rested with the State throughout the entire trial. Further, the jury was instructed that a person charged with a crime cannot be compelled to testify or incriminate himself and should a defendant choose to remain silent, the jury has no right to draw any inference of guilt against the defendant from his silence. These instructions were given without objection of Maez's counsel.

Maez cites several cases which stand for the proposition that neither the trial court nor the prosecutor may comment directly or indirectly upon the defendant's failure to testify. He also claims that his counsel's failure to object to the instructions was not a waiver because giving them was fundamental error.

In *Parker v. State* (1981), Ind., 425 N.E. 2d 628, the defendant did not testify at his

trial. On appeal he contended the trial court erred in not giving a jury instruction, *sua sponte*, that the jury should not consider the defendant's failure to testify in arriving at its verdict. The court answered this issue as follows:

"[2–5] In Indiana the choice of whether or not the trial court instructs the jury on the defendant's failure to testify belongs to the defendant. To preserve error on this issue, the defendant must request an instruction. *Hunt v. State*, (1973), 260 Ind. 375, 381, 296 N.E.2d 116, 120. If the request is made, the trial court should advise the jury that it should not consider the defendant's failure to testify. *Carter v. Kentucky* (1981), 450 U.S. 288, 303–305, 101 S.Ct. 1112, 1121–22, 67 L.Ed.2d 241, 254; *Lucas v. State* (1980), [274] Ind. [635], 413 N.E.2d 578, 583. If the trial court does not comply with the defendant's request, we will reverse the conviction, unless the State shows that the error was harmless beyond a reasonable doubt. *Lyda v. State* (1979), [272] Ind. [15], 395 N.E.2d 776, 781. Conversely, the trial court may not give an instruction on the defendant's failure to testify over his timely objection. *Dooley v. State* (1979), [271] Ind. [404], 393 N.E.2d 154, 156 (cases cited therein). Our decisions in this area do not support the defendant's assignment of error."

*Id.* at 630.

The above quoted language in *Parker* was reaffirmed in the case of *Coleman v. State* (1988), Ind., 521 N.E.2d 1312, a post-conviction relief action where the sole contention was that the trial court committed fundamental error in failing to give an instruction to the jury concerning appellant's constitutional right to refrain from testifying.

In *Van Evey v. State* (1986), Ind., 499 N.E.2d 245, another post-conviction relief action, Van Evey complained, as had the defendant in *Parker*, that the court had failed to instruct the jury as to their duty under IND. CODE 35–1–31–3 which pertains to a situation where the defendant does not testify and his failure to do so should not be commented upon or referred to in the argument of the cause, or in any manner considered by the jury trying the cause. The statute also states "[i]t shall be the duty of the court, in such case, in its charge, to instruct the jury as to their duty under the provisions of this section." Van Evey argued that the language of the statute required the trial court to instruct the jury that it may not draw a negative inference from an accused's failure to testify. He contended that this requirement existed despite his failure to request the instruction. The court, citing *Parker*, restated the proposition that the choice of whether or not the trial court instructs the jury on a defendant's failure to testify belongs to the defendant. Van Evey also raised this issue by claiming his counsel was ineffective because he did not request a final instruction regarding his failure to testify. The court answered this challenge by noting that defense counsel may have considered that the giving of a "no adverse inference" instruction might have drawn undue emphasis to the fact that Van Evey did not testify. Then the court stated at page 247:

"[i]n any event, this Court will not speculate on what may have been the most advantageous strategy in a particular case. *Young v. State* (1985), Ind., 482 N.E.2d 246. The decision of whether to request the additional instruction was strictly a matter involving counsel's professional judgment in formulating trial strategy. His decision in this case cannot be viewed as constituting ineffective assistance."

█ A review of the above supreme court decisions makes it clear it is a question of strategy on the part of the defendant whether the court in its instructions should refer to the defendant's failure to testify and caution the jury not to consider that as evidence of his guilt. Should he permit the instruction, and call attention to his failure to testify, or would it be more advantageous, since the jury has obviously observed that he has not testified, to caution the jury to not consider the situation?

Here, Maez was not present at trial. That fact was obvious to those who were

present. Under these circumstances, we agree with the State's contention that the jury had to have some guidance in the matter.

Our conclusion that no error, fundamental or otherwise, occurred in the instructions of the court is supported by the case of *State v. Lynch* (1981), App.Div., 177 N.J.Super. 107, 425 A.2d 696, where, after the court had begun the jury selection process and adjourned for the day, the defendant failed to appear the following day and the trial was continued in his absence. Without any specific discussion with defendant's counsel, the court gave the "election not to testify" charge. The court concluded that the defendant's constitutional rights were not violated and he was not prejudiced by the giving of the instruction. The court stated 425 A.2d at p. 700:

> "Although neither defendant himself nor his trial attorney requested that the charge be given it may be reasonably anticipated that failure to give it would invite defendant's vigorous assertion that he had a right to have the jury so instructed—a right so personal that it could not be waived by counsel. Furthermore, his absence from the courtroom after the very first day of jury selection was quite obvious to the jurors. The 'election not to testify' charge could not have 'highlighted' his disappearance as suggested by defendant. The jury was undoubtedly keenly aware of his disappearance. Hence, the court was faced with the same kind of 'Hobson's choice' as in *State v. McNeil*, [ (1978) App.Div.] *supra*, 164 N.J.Super. [27] at 32–33, 395 A.2d 549, where both defendants elected not to testify but only one requested that the charge be given. It would have been error to refuse the charge because of the non-consenting defendant's objection. *Id.* at 31, 395 A.2d 549.
>
> Defendant's absence made it impossible for him to make his own independent, knowing election. We cannot now know how defendant would have chosen had he been present. With the acuity of hindsight, we may reasonably conclude that it may have been wiser to omit the cautionary instruction. However, inclusion

of the charge does not violate defendant's constitutional rights. *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). Under the circumstances of this case, we find no prejudice to appellant in the inclusion thereof."

### III. *Instructions—A. Reasonable Doubt*

 Maez contends that the court's final instructions # 12 and 13 are confusing when read together. The instructions were:

> "FINAL INSTRUCTION # 12
>
> The doctrine of 'reasonable doubt' applies to the law, as well as to the facts established or not established by the evidence, and you should give the Defendant the benefit of any reasonable doubt you may have as to the law." TR 554
>
> "FINAL INSTRUCTION # 13
>
> You are instructed that the doctrine of reasonable doubt applies only to the ultimate question of the Defendant's guilt or innocence and the essential facts which establish it, and the mere fact that some subsidiary matters are but imperfectly proved does not make it the duty of the jury to acquit, if the ultimate question of the Defendnat's guilt is established to your satisfaction beyond a reasonable doubt.
>
> All the material allegations of the information must have been proved by the evidence beyond a reasonable doubt before you would be warranted in convicting the Defendant. If any one of the material allegations has not been so proved it would be your duty to acquit. If all the material allegations of the information have been so proved, it is your duty to convict the Defendant." TR 555

Maez acknowledges that as a general rule the jury instructions must be viewed as a whole in determining if reversible error has occurred. *Hudson v. State* (1986), Ind., 496 N.E.2d 1286. He then claims:

> "Final Instruction number 12 informs the jury that the Doctrine of Reasonable Doubt applies to the law and the facts. However, immediately thereafter the

jury is told that the Doctrine of Reasonable Doubt applies only to the ultimate question of the Appellant's guilt or innocence. These two instructions thereby create confusion as to what the Doctrine of Reasonable Doubt applies to in the case. The Doctrine of Reasonable Doubt is an important safeguard of our criminal justice system and as such the two cited instructions make it unclear how that safeguard applies. As was held in *Hashfield v. State* (1965), 247 Ind. 95, 210 N.E.2d 429, instructions which are misleading or confusing should not be given. As the instructions cited here create confusion as to how the important Doctrine of Reasonable Doubt applies, the Appellant contends they should not have been given. By giving such confusing instructions the Appellant maintains his conviction should be set aside."

Appellant's Brief, p. 24.

We do not believe Maez's argument is cogent. He cites no authority for the proposition that the giving of these two instructions would be misleading. In addition, as the State points out, there was no objection to these instructions at trial. No issue regarding allegedly erroneous instructions will be preserved for appeal where no objection to them is made at trial. *Baker v. State* (1987), Ind., 505 N.E.2d 49.

Further, the State agrees that instructions must be construed as a whole and if, when so considered, they state the law fully and correctly, they are correct. *Shull v. B.F. Goodrich Co.* (1985), Ind.App., 477 N.E.2d 924. In addition, the State points out that jury instructions lie largely within the trial court's discretion, *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, and even if there were error in a particular instruction, such error will not justify reversal unless the error is of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case. *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1056.

We do not agree with Maez's argument that instructions 12 and 13 create confusion. They complement each other. Instruction #12 states the general rule, which Maez does not challenge, that the law of reasonable doubt applies to the law as well as the facts, and that the jury should give the defendant the benefit of any reasonable doubt it may have as to the law. Instruction #13 clarifies the jury's duties by explaining that the doctrine of

reasonable doubt applies to the material allegations of the information and not some subsidiary matters. Here, the instructions complained of fully informed the jury on reasonable doubt, the duty of the jurors in deliberations, and the purpose of the instructions. They were properly given.

IV. B. *Instructions Pertaining to Article I, Section 19 of the Indiana Constitution*

■ Article I, Section 19 of our constitution provides that the jury shall have the right to determine the law and the facts. Maez contends that Final Instructions #25 and 30 given by the court are incomplete and create confusion. These instructions read as follows:

"FINAL INSTRUCTION #25

In giving these instructions, you will understand that the Court in no manner intends to express or intimate any opinion on the weight of the evidence, credibility of the witnesses, or as to what your verdict should be. These matters are entirely for your consideration, and you must not conclude from the fact that an instruction has been given that the Court is expressing any opinion as to the facts. During the course of the trial, I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest how you should decide any questions of fact submitted to you. If anything I have said or done during the course of the trial has seemed to so indicate, you will disregard it entirely and form your own opinion, as you are the exclusive judges of the questions of facts submitted to you." TR 566

"FINAL INSTRUCTION #30

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with you fellow jurors. In the course of your deliberations, do not hesitate to examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction

as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans, you are judges— judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case." TR 572

Maez argues that the court's Final Instruction #1 correctly informed the jury that they were the judges of the law and the facts. However, he states that the above quoted Instructions #25 and 30 retreat from that position by telling the jurors that they are the judges of the facts without "referring to the law", Appellant's Brief, p. 27. Maez then contends:

"[f]inal instructions numbered 25 and 30 are incomplete and therefore inaccurate statements of Article I, Section 19 of the State Constitution. Unlike a situation where the jury only hears the instructions and must construe them as a whole, in this case the jurors had the individual instructions in their possession to review and compare. How could the jurors reconcile the clear difference between what they read in Final Instruction Number 1 and what they read in Final Instructions Numbered 25 and 30? They are left to guess and speculate as to the true nature of their duty under the State's Constitution. As noted earlier, misleading or confusing instructions should not be given. *Hashfield v. State* (1965), 247 Ind. 95, 210 N.E.2d 429. As such, Appellant asserts that these erroneous instructions warrant reversal." Appellant's brief, p. 27.

Again, we note, Maez cites no authority for his proposition that these instructions were misleading. In addition, no objection was interposed to the giving of these instructions. Maez again concedes in his brief that as a general rule the jury instructions must be viewed as a whole in determining if reversible error has occurred. Maez does not point out any incorrect statement of the law in the challenged instructions. We do not find the instructions misleading. The jurors are the judges of the facts and law as they were instructed. There is no reason why the court cannot and should not, in detail, explain in a separate instruction to the jury their responsibility to resolve the facts of the case.

There was no error here.

### V. *Improperly Marked Instructions*

■ Three of the Final Instructions, 5, 7, and 30, had portions, either words or sentences completely blanked out. Several other instructions had case citations at the bottom of the instructions. The instructions were furnished the jurors during deliberation.

In support of Maez's contention that this situation created reversible error, Maez cites *Cornett v. State* (1982), Ind., 436 N.E.2d 765 where, over the objection of Cornett's counsel, the court, instead of re-reading the instructions, sent the instructions to the jury room for use during the remainder of deliberations. The court pointed out at pages 765 and 766 as follows:

"Final Instructions 6–10, 12, 19, and 20 appear in the form similar to Final Instruction 6. Each contains a heading, 'Defendant's Instruction No. _____,' the file stamp of the trial court, the signature of the trial judge, and the labels, 'Given:', 'Refused:', and 'Given as Modified:' with a check next to 'Given:.' From these documents the jury learned the source of several instructions and gained the opportunity to speculate about the order in which Defendant wanted his instructions read. The jurors may also have speculated about which of 'Defendant's Instruction No. _____' the trial court had omitted and why they were omitted.

The remaining Final Instructions, 11, 13, 21 and 22 are reproduced in the appendix. With the exception of No. 22 they follow the same pattern described above except that the check mark appears next to 'Given as Modified:' and a portion of the text of the instruction bears a mark. Instruction 22 is unique in that it is footnoted. While the record shows, 'Court gives final instructions to the jury as follows, to-wit: Instructions numbered 1 through 26 inclusive;' we cannot be certain that the trial court actually read these footnotes to the jury. The record does not contain the remainder of footnote 2 or all of footnote 3."

The court, after stating the trial court erred in denying Cornett's request that the instructions be reread, commented as follows:

"The trial court compounded its omission by giving the jury written instructions unpurged of information that might have

caused the jurors to speculate upon the relative importance of any particular instruction. *Compare Rock v. State, supra* [ (1981) Ind., 426 N.E.2d 1320]. The jurors may have attached significance to the instructions labeled 'Defendant's Instruction No. _____.' *Sample v. State* (1885), 104 Ind. 289, 290, 4 N.E. 40; *Dodd v. Moore* (1883), 91 Ind. 522, 524. The jurors may have wondered about the black marks which appear on Instructions 11, 13 and 21—who made them?; why were they made?; does the judge want us to read this instruction more carefully than the unmarked ones?

The possible permutations are endless. Final Instruction 22, an annotated instruction, invites further opportunities for the jurors to draw inferences about the law or the evidence, which the trial court may not have intended to convey. However inadvertent or unintentional, the trial court's sending the final instructions to the jury, in the form which the record discloses, and after deliberations had commenced, amounted to a qualification of or addition to those instructions just as surely as if it had given an additional instruction or qualified an instruction already given with an additional instruction. By its action the trial court placed a gloss upon the instructions that they did not contain when they were read to the jurors and thereby created the same potential for prejudice to the defense, which *Lewis [v. State*, (1981) Ind., 424 N.E.2d 107] and its progeny seek to prevent." *Id.* at 766.

The State counters by arguing that, here, the deleted portions were completely blacked out and not at all readable, whereas in *Cornett*, thin lines were drawn through paragraphs and sentences so that the language was clearly readable. The State also points out that the final instructions in this case containing annotations simply had the case cite and did not expound or elaborate on the cases cited as did Instruction # 2.001 in *Cornett*. Further, the instructions in this case were labeled "Court's Final Instruction No. ____," not, as in *Cornett*, "Defendants's Instruction No. _____." In addition, the State asserts, there was so much unpurged information on the instructions in *Cornett*, to give rise to possible jury speculation that the court was compelled to find it amounted to an additional instruction or qualified an instruction already given.

In addressing this issue we first observe that Maez does not claim he interposed an objection to the court's procedure. Secondly, in both *Maxie v. State* (1985), Ind., 481 N.E.2d 1307 and *Henning v. State* (1985), Ind., 477 N.E.2d 547, where the trial courts sent instructions to the jury that were marked or contained citations, our supreme court held that the markings, notations and footnotes on the instructions did not present a great danger of juror speculation as to their relative importance, nor were the extraneous markings of such nature that they gave rise to a potential for misconstruction or undue emphasis.

We find that this case falls within the doctrine of *Maxie* and *Henning*. Neither the blacked out language in several of the instructions nor the case citations, are so significant that they can be said to have resulted in misconstruction or undue emphasis.

## VI. *Ineffective Assistance of Counsel*

Essentially, Maez contends that the failure of his counsel to object to all of the foregoing issues represents ineffective assistance of counsel. The State responds that counsel's failure to interpose objections to these court actions did not rise to the level of professional incompetence, especially in light of the fact that no error occurred in these actions by the court.

■ Under *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, there is a two-step analysis in determining the issue of effective assistance of counsel. The first is the "performance component" which focuses on the actual performance of the attorney to see whether he acted unreasonably. There remains, however, a strong presumption that counsel rendered adequate legal assistance. To overcome the presumption, the defendant must identify the act or omission and the court must determine from all the circumstances whether the act or omission was outside the range of professionally competent assistance.

The second step is the "prejudice component" which focuses on the prejudice to the client resulting from the attorney's unreasonable acts. The attorney's deficient performance must have so prejudiced the defense that the result of the trial is unreliable.

■ In discussing the alleged errors raised by Maez, we noted the waiver situa-

tion wherein his counsel did not object to the court's conduct. We also proceeded to comment on the lack of error in the court's proceeding with the trial, the giving of instructions, and permitting the jurors to take the instructions in the jury room. Thus, Maez's complaint of ineffective assistance of counsel fails the first step of analysis or the "performance component." We find no merit in the claim of ineffective assistance of counsel.

AFFIRMED.

GARRARD, and CONOVER, P.JJ., concur.