Felton v. The State.

No. 17,369.

FELTON v. THE STATE.

CRIMINAL LAW.—*Consideration of Evidence on Appeal.*—It is only where there is an absolute failure of the evidence to sustain the finding or verdict on some material point that the Supreme Court will interfere on that ground alone.

SAME.—*Rape.—Consent.—Subjection of Will.—Outcry.—Physical Resistance.*—Where a woman alights from a train at three o'clock in the morning, at a railroad station, and being compelled to wait some time for a train upon another road which will take her to her destination, inquires of a stranger for a hotel, who recommends one, and another stranger, the defendant, who is the driver of the only vehicle then at the station, overhearing the conversation, offers to take her to the hotel in his vehicle, which contains two other men, also strangers to her, and such defendant, after she enters his vehicle, instead of taking her to the hotel, fraudulently drives out of the town into a ravine in the woods, subjecting her to indignities on the way and causing her to fear for her life, at which she cries and begs to be let go, and in the ravine the defendant commands her to dismount and by force lays her upon the ground and has intercourse

with her, against her will, after which, upon her attempting to arise, he profanely commands her to lay still and let the other men have intercourse with her, and she is then taken to a lumber yard and deserted, the defendant is guilty of rape, without proof of outcry or physical resistance.

SAME.—*Rape.—Instruction.—Overpowering Mind.*—An instruction that "consent, induced by fear of personal violence, is no consent, and though a man lay no hands on a woman, yet, if by an array of physical force he so overpowers her mind that she does not resist, he is guilty of rape by having the unlawful intercourse," is not erroneous.

SAME.—*Rape.—Consent.—Force.—Fear.—Instructions.*—For other instructions given and refused, involving the matters of force, fear and consent, see the opinion.

SAME.—*Failure of Defendant to Testify.—Instruction Upon Must be Requested.*—The failure of the court to instruct the jury regarding their duty in a case where the defendant does not testify, is not error unless the defendant requests such an instruction.

From the Grant Circuit Court.

*H. Brownlee* and *H. J. Paulus*, for appellant.

*A. G. Smith*, Attorney-General, *O. L. Cline*, Prosecuting Attorney, and *C. M. Ratliff*, for State.

DAILEY, J.—This was a prosecution begun in the Grant Circuit Court, by the State of Indiana against the appellant, Mack Felton, by indictment, charging him with the commission of the crime of rape at said county, on the 10th day of September, 1893, upon the person of one Mollie Terrell.

Upon a plea of not guilty the cause was submitted to a jury for a trial in the court below, who found a verdict against the appellant, finding him guilty of the crime of rape, as charged in the indictment, and assessing his punishment at imprisonment in the State prison for five years. There was a judgment upon this verdict. Before the rendition of the judgment thereon, the appellant moved the court for a new trial, which motion was overruled, and to this ruling he properly saved an exception. From this judgment he prosecutes an appeal and assigns

as error that the court erred in overruling his motion for a new trial.

Under the causes specified for a new trial, it is earnestly urged by the learned counsel for the appellant, that the evidence is entirely insufficient to sustain the conviction of the crime of rape, and that the verdict of the jury is, therefore, contrary to, and not sustained by, the evidence, and is, consequently, contrary to law.

The rule has long been settled in this court that in criminal as well as civil causes verdicts will not be disturbed merely on the weight of the evidence. When the evidence tends to sustain the verdict on every material point the court will not reverse the conclusion reached by the trial court and jury. *McCarty* v. *State,* 127 Ind. 223 (224).

It is only where there is an absolute failure of the evidence to sustain the finding or verdict on some material point that this court will interfere on that ground alone. *Murphy* v. *State,* 97 Ind. 579 (582); *Ard* v. *State,* 114 Ind. 542; *Wachstetter* v. *State,* 99 Ind. 290; *Hudson* v. *State,* 107 Ind. 372; *Ritter* v. *State,* 111 Ind. 324; *Trout* v. *State,* 111 Ind. 499; *Kleespies* v. *State,* 106 Ind. 383; *Dolke* v. *State,* 99 Ind. 229; *Clayton* v. *State,* 100 Ind. 201; *Garrett* v. *State,* 109 Ind. 527.

It is insisted:

First. That there is no evidence that the defendant accomplished his purpose by means of force either used or threatened.

Second. That the woman injured did not resist to the extent of her ability.

These two propositions are so closely related to each other that we may consider them together. A careful perusal of the evidence, as it appears in the record, bearing upon the question of force used by the appellant, and of resistance by her, reveals the fact that until the time

of the occurrence in dispute, the appellant and the prosecuting witness were wholly unknown to each other. She was a resident of Kokomo, Indiana, but was returning home from the city of Muncie, where she had been on a visit to her husband, who was engaged in work at that place, and arrived at Marion, Indiana, at 3 o'clock in the morning, where she was compelled to remain for a time until she could secure a train for her destination. The woman was an entire stranger in the city, never having been there before; she had a valise in her hand, and was in need of assistance to a boarding house or hotel. She saw a Mr. Peters standing on the platform at the depot, and made her wants known to him, requesting his assistance to a private house where she could be entertained during the *interim* between trains.   Peters recommended to her the "Spencer House" and promised to attend her to that place.   There was no vehicle at the depot at the time, except an open topped, two-seated carriage, drawn by two horses and driven by the appellant. It was occupied by two men besides this defendant, all of whom were entire strangers to her.   The appellant, Felton, was present on the platform when the conversation was had, and overheard what was said.   He stepped up to Mrs. Terrell and informed her that she could ride with him, and he would drive her to the hotel.   Peters then told him that if he would do so, it would be an accommodation to him, and requested her to go with the appellant.   She entered the carriage with the defendant, under protest, upon his promise to take her to the hotel, and thereupon he drove it rapidly away.   Instead of conveying her to the hotel, she was fraudulently driven with great speed to the woods south of the city into a ravine, in the darkness, where he stopped the team, laid a robe on the ground and had her dismount from the

vehicle, after which he caught the woman by the shoulder and arm and laid her down.

After the defendant had accomplished his purpose, she attempted to get up, and he said: "By G–d, you lay still and let them have something to do with you," and she was thus compelled to remain prostrate until she also submitted to the lascivious embraces of his two confederates. When they had gratified their carnal desires, they placed her in the carriage and took her to a lumber yard where she was deserted and remained in fear during the residue of the night. In the morning, at about 5 o'clock, she appeared at a restaurant and called for a sandwich and a cup of coffee; complained of the headache and of the outrage that had been committed upon her, and was weeping at the time. She repeated her complaints to the coroner, to a policeman, and to the family with whom she was left for care and attention, and caused this prosecution to be instituted against the defendant for his crime.

It also appears that she was sick for five weeks after the transaction, thus indicating that she had suffered a severe mental and physical shock on account of the appellant's revolting conduct.

In addition to all this, it is shown by the record, that very soon after he started from the depot he caught her by the leg and made an indecent and insulting proposal to her, and told her of his design; that she begged him to have nothing to do with her, and to let her go, and cried constantly because of the indignities heaped upon her and for fear they would take her life. She was a small woman, in the presence of three able-bodied men, and doubtless apprehended great bodily harm from her assailants, who were abducting her from the city limits; although appellant said, at the time, that he had no intention of harming her. A declaration like this was not

calculated to inspire confidence in the innocence of his motives, when it was refuted by conduct and declarations likely to produce an opposite effect. If the assurances of a party accused, .to the prosecuting witness, are a more potent factor than his conduct, in determining the question of his guilt, then he may commit any heinous offense and afterwards come into court claiming the benefit of them, and thus escape the punishment.

It is insisted, by appellant's counsel, that the crime in this case is not proven, because the woman made no outcry. But it will be borne in mind that she was a person small in stature, away from home, in the hands of strangers, and in fear of great violence; that she saw no one to whom she could appeal for relief after they left the depot on the way to the woods where the act was perpetrated; and as the deed was committed in a grove at the edge of town, where there were no immediate habitations, a cry of distress would have been of little avail. Besides, in the terror of her situation, she may have thought the defendant would kill her before assistance could come if she made an outcry. Aside from this, an examination of the evidence satisfies us that she is not a person of ordinary intelligence, and she probably acted from the appearances as they at the time presented themselves to her mind. In the peril of her situation, surrounded by the influences that environed her, the courts can not split hairs in measuring the degree of resistance she was capable of making.

It is the theory of the State, fairly supported by the evidence, that the mind of the prosecuting witness was so overcome by the language and conduct of defendant and his two associates, and the surroundings, that she was unable to do more than was done to resist the assault, and hence the act of sexual intercourse was forcible and against her will. "The nature and extent of the

resistance which ought reasonably to be expected in each particular case must necessarily depend very much upon the peculiar circumstances attending it, and hence it is quite impracticable to lay down any rule upon that subject as applicable to all cases involving the necessity of showing a reasonable resistance." *Anderson* v. *State,* 104 Ind. 467 (474); *Ledley* v. *State,* 4 Ind. 580; *Pomeroy* v. *State,* 94 Ind. 96; *Commonwealth* v. *McDonald,* 110 Mass. 405; 2 Bishop Crim. Law, section 1122.

In the case at bar, if the act of intercourse had been with the consent of the woman, it seems strange that the defendant discharged her at the lumber yard, an out of the way place, instead of taking her to the hotel as he promised to do. This of itself may have been a circumstance that had some weight with the jury in determining the question of the defendant's guilt.

It is not the law of this State that a woman assaulted with intent to commit a rape upon her is expected "to bite, if she has teeth; to kick, if she has feet; to scream, if she has a mouth; and to generally resist by all other violent means within her power." Such an instruction, in substance, was asked by the defendant in *Anderson* v. *State, supra,* and this court said: "The court had already instructed the jury that it was incumbent upon the State to show that the prosecuting witness had resisted with all the means within her power, and that was as far as the court was required to go under our decided cases, and others of recognized authority in this State."

In *Ledley* v. *State, supra,* the court said: "On the subject of resistance, a recent writer says, that if resistance is overcome by physical force, or her will overpowered by fear of death, or by duress, the crime is complete, though she ceased all resistance before the act itself was finally consummated. She parts with her virtue as a traveler with a pistol at his breast parts with his

purse. In both cases the will is overpowered. It may be a voluntary muscular act, but not a free will act. They submit to their fate against their will, but voluntarily for fear of worse. Courts can not fastidiously expect every female to prefer death to violation, and her demeanor on such trying occasions, whether of tame submission or active resistance, is a circumstance for the jury to consider.''

The case of *Eberhart* v. *State*, 134 Ind. 651 (654), cites Bishop on Crim. Law as follows: ''Some of the cases, both old and modern, are quite too favorable to the ravishers of female virtue, and ought not to be followed, on this question of resistance. * * * The better judicial doctrine requires only that the case shall be one in which the woman 'did not consent.' Her resistance must not be mere pretense, but in good faith.''

In *Huber* v. *State*, 126 Ind. 185, the court held that ''The rule does not require that the woman shall do more than her age, strength, and the attendant circumstances make it reasonable for her to do in order to manifest her opposition.'' The better rule is that it is not necessary that a woman should use all the physical force she has in resistance, but it must be real, and must have been overcome by the force of the defendant. *State* v. *Shields*, 45 Conn. 256; *Commonwealth* v. *McDonald*, *supra*.

Under one of the causes assigned for a new trial, the appellant calls in question the action of the trial court in giving to the jury, of its own motion, instruction number four, as follows: ''If you find from the evidence in this case that an act of sexual intercouse did take place between the defendant and prosecuting witness, Mollie Terrell, as averred in the indictment, the question whether or not the prosecuting witness voluntarily consented to such act is a question of fact for you to determine from the evidence in the case. The defendant,

Felton, insists that the prosecuting witness, Mollie Terrell, voluntarily consented thereto, and that he used no force or coercion of a kind to compel such consent, but that she yielded to his desires at his request; while on the other hand the prosecution insists that she did not voluntarily consent, but that she was induced by fear of personal violence, and that by an array of physical force the defendant so overpowered her mind that she did not resist, and only yielded when her will was overpowered, and that if she finally submitted to her fate it was against her will and for fear of more serious consequences. You are to say from the evidence which, if either, is right, and if after giving due weight to all the evidence you find the prosecuting witness, Mollie Terrell, did voluntarily consent to such act of intercourse, and not under coercion, you should acquit; but if you find, beyond a reasonable doubt, that the act was by force, and against her will, and find the other facts averred in the indictment established beyond a reasonable doubt, you should convict."

This instruction is in the exact language of an instruction given and approved by this court in the case of *Anderson* v. *State, supra,* except that in the case at bar the words "by an array of physical force" are injected into it, and it is objected that there is no evidence to which the expression was applicable, and that it was calculated to mislead the jury.

Without again attempting to give a recital of the transaction as it occurred, we are of the opinion that the hypothesis submitted to the jury by this instruction was fairly applicable to the evidence. It will be observed that the court does not undertake to say what has been proven by either the State or the defense. The jury were left free to determine from the evidence which, if either, is right.

We do not think, under all the evidence in the case, that the instruction either misled the jury or prejudiced the substantial rights of the defendant. *Graeter* v. *State*, 105 Ind. 271 (274).

Complaint is also made of the action of the court in giving instruction number 5, as follows: "On the subject of consent, the court instructs you that a consent induced by fear of personal violence is no consent, and, though a man lay no hands on a woman, yet, if by an array of physical force he so overpowers her mind that she does not resist, he is guilty of rape by having the unlawful intercourse."

Here, again, it is contended that the instruction introduces into the case the element of "physical force," which had no existence in fact. It is not necessary to enlarge upon what we have heretofore said. This statement of the law is found in 2 Bish. on Crim. Law, section 1122, and is applicable to the evidence in the case.

Counsel further complain of the refusal of the court to give instruction number 9½, requested by appellant. This is a somewhat lengthy instruction, but we think it is not a correct statement of the facts as shown by the evidence. It omits to state, or in any way refer to the fact of fear or apprehension of harm on the part of the prosecuting witness. The subjective condition of the injured party is totally ignored in the instruction.

In *Barker* v. *State*, 48 Ind. 163 (167), this court said: "Instructions should be predicated on the whole evidence, and when they have a tendency to restrict the consideration of the jury to isolated facts, to the exclusion of other facts which are before them in evidence, it is not only a misdirection, but an infringement on the province of the triors of the fact."

Further the instruction closes by saying, in substance, if she submitted to the act of intercourse by defendant

he would not be guilty. All the facts stated in the instruction might be true, yet, if the woman did submit to the act of intercourse, not voluntarily, but against her will, the defendant would be guilty of rape. Besides, the ground occupied by this instruction was covered by instructions number 6 and 8 asked by the appellant and given by the court, and he could not be harmed by its refusal.

Counsel complain of the refusal of the court to give instruction number 7 asked by the defendant, upon the subject of want of consent.

But in instruction number 1, asked by the appellant and given by the court, this language occurs: "Rape is the carnal knowledge of a woman without her consent."

In a subdivision of instruction 3, this language occurs: "That said carnal knowledge of said Mollie Terrell was not only obtained by force and threats, but without the consent, and against the will of said Mollie Terrell."

In instruction number 4, asked by the appellant, is the following language: "You must be satisfied from the evidence, beyond a reasonable doubt, that he had carnal knowledge of said Mollie Terrell forcibly and against her will."

The fifth instruction, asked by appellant, told the jury in substance that if she consented to the act of intercourse, it would not be rape. The idea of want of consent being an essential element in the offense charged, is brought before the jury prominently, in most of the instructions given in the cause, so that they were fully advised upon the question, and knew it to be an ingredient of the crime.

There is nothing in the omission of the court to instruct the jury, upon the failure of the defendant to tes-

tify in his own behalf, as the defendant did not request such instruction. *Grubb* v. *State*, 117 Ind. 277 (280).

We find no error in the record for which the judgment should be reversed.

Judgment affirmed.

Filed Nov. 27, 1894.