ROGER RIDDLE AND DELORIS SMITH A/K/A DELORIS RIDDLE
v. STATE OF INDIANA.

[Nos. 974S183; 974S182. Filed June 9, 1976.]

*Michael J. McDaniel,* of New Albany, for appellants.

*Theodore L. Sendak,* Attorney General, *Joseph J. Reiswerg,* Deputy Attorney General, for appellee.

ARTERBURN, J.—These two cases arise from the same crime, the murder of a New Albany, Indiana, woman in July of 1971. One Appellant, Roger Riddle, was convicted on January 30, 1974, of first degree murder. His "common law wife", Deloris Smith, was convicted on January 16, 1974, of one count of accessory before the fact and one count of accessory after the fact. Both Appellants were sentenced to life imprisonment.

These cases were tried in the same court, before the same judge, and with the same defense counsel. Though tried at different times, substantially the same evidence was shown in both proceedings. We have therefore determined to treat the two appeals together in this opinion.

The evidence in these trials revealed that Kenneth B. Watkins, a major of the detective department of the New Albany Police Department, worked through the night of July 8, 1971, and into the morning of July 9. He returned to his New Albany home at about 6:00 a.m. and found his wife lying on the floor, dead. Upon finding that his phone did not work, Watkins contacted police through a neighbor.

Police arriving on the scene found that the phone lines to the Watkins home had been cut. There were blood smears on the inside and outside of the front door of the home. Footprints in the morning dew led from the front door to a creek bed. Police followed the footprints and found, across the creek, automobile tire marks.

Police were unable to obtain any leads upon examination of the scene and the victim. Sketches were made of the scene of the crime and photographs were taken of the victim, the home, and the tire tracks. The footprints in the dew, however, were gone before photographs or measurements could be taken. Efforts to obtain fingerprints were unsuccessful. The report of the pathologist who examined the deceased established the cause of death to be a stab wound in the back which penetrated the aorta. Lacerations in the front of the neck of the victim were inflicted after the fatal wound was delivered. No measurements of these wounds were taken to determine the minimum length of the murder weapon.

It was in this context that police suspicions were aroused by a news item which reported a somewhat similar murder in Louisville, Kentucky. The Appellants were being held for that crime. Officers of the New Albany and Indiana State police departments traveled to Kentucky to interrogate the suspects. After several such trips, police obtained oral and written confessions which led to the Appellants' convictions.

Raised in these appeals are issues of two categories. First raised are issues relating to the oral and written statements admitted into evidence. Second is the issue of whether evidence of the Louisville crime should have been admitted into evidence. Our resolution of this second issue requires that the judgments in these cases be reversed. For the purpose of aiding the retrial of these Appellants, we will first discuss the admissibility of their various oral and written statements.

## I.

Appellant Roger Riddle raises three issues in regard to the admissibility of his oral and written statements. He first challenges the admissibility of an oral statement made by him to police on November 11, 1971. Also challenged is the admissibility of a written confession obtained on February 2, 1972. It is contended that this written statement was the fruit of the prior oral confession, which was illegally obtained. Finally, this Appellant contends that it was error for the trial court to deny a defense motion for a directed verdict. It is urged that the only evidence of guilt at trial were the tainted confessions which should not have been admitted into evidence.

We will look primarily at the first argument. It is upon that contention regarding the initial oral confession that the other issues depend.

Police visited the Appellant twice—on October 11, 1971, and October 29, 1971—before obtaining an oral statement on November 11. Police had received a letter on November 10 from Kentucky authorities stating that the Appellant wished to talk to them. When they arrived at the Kentucky penitentiary in which the Appellant was being held, however, the Appellant refused to sign a waiver form and said he wanted an attorney. It is this request for an attorney that is the central issue here.

The procedure to be followed by police upon advising a suspect of his rights is clear. "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. * * * If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda* v. *Arizona,* (1966) 384 U.S. 436 at 445, 474, 86 S.Ct. 1602 at 1612, 1628, 16 L.Ed.2d 694 at 707, 723. The admissibility of

the Appellant's oral statement hinges on whether or not police interrogation proceeded after his request for counsel.

Detective Sergeant Paul Parsons of the New Albany Police Department testified regarding the November 11 meeting with the Appellant:

> "A November 11, 1971, Detective Downs and myself went to Eddyville at the request of Riddle. Upon arrival there Riddle was brought into the office by Captain Johnson to where we were. Detective Downs read him his Rights off of a yellow Rights sheet. Riddle refused to sign. He said he wanted an attorney. At this time Detective Downs advised him 'You sent for us. We are two hundred mile from home.' Riddle said 'I will talk to you all. I have something bothering me.'
>
> Q Did he talk to you then?
>
> A Yes. He did."

We do not believe that police interrogation proceeded after the Appellant's request for an attorney. Rather, the record reflects that a police officer made an exasperated comment after traveling 200 miles at the request of the Appellant to talk and then finding it was a futile trip. The Appellant then said, "I will talk to you all."

The trial court specifically sought to determine if anything else was said to the accused:

> "THE COURT: Now your story is that after Detective Downs said you we're two hundred miles from home, there was nothing else said.
>
> A No sir.
>
> THE COURT: The defendant said he still had something to tell them?
>
> A He said 'I will talk to you all. I have something bothering me.' He sent for us.
>
> THE COURT: Did he make any more request for a lawyer then?
>
> A No. He didn't say another word about a lawyer."

The record indicates that this Appellant's November 11 oral statement was made voluntarily and with full knowledge of his rights. We can find no error in the trial court's denial of the defense motion to suppress it. The other two conten-

tions presented are thus also without merit. Because the oral statement was legally obtained, it could in no way taint the written confession given the following February. No other challenge to the written statement is presented and we can only conclude that its admission into evidence was proper. The defense motion for a directed verdict was similarly properly denied.

## II.

Appellant Deloris Smith raises similar issues in her appeal. Police visited this Appellant as they did her "common law husband" when they learned she was being held for the similar Louisville crime. Oral statements were obtained from her on October 11, 1971, November 1, 1971, and November 29, 1971. Written statements were obtained on January 18, 1972 and March 3, 1972. In general, this Appellant challenges the admissibility of the oral statements, then the admissibility of the written statements. Because the only evidence of guilt was contained in these confessions, it is then contended that a defense motion for a directed verdict was erroneously denied.

The oral statements made on October 11, November 1, and November 11, were made without the accused being advised of her rights under *Miranda* v. *Arizona, supra.* However, the record reveals that the Appellant volunteered her statements before such warnings could be given. New Albany policeman Paul Parsons testified as follows:

"* * * So at this time the authorities told us to come back to an office and when we got there, Deloris was sitting in a chair. The first thing we done, we advised Deloris that we were two Detectives from New Albany, Indiana, and at that time she said 'Oh, I know what you want. It's about that Cop's wife that was murdered in New Albany.' She went on to state—we did not ask her no questions. * * * And she stated at this time, she said 'My husband, Roger, killed her.' We did not ask her any more. So we left. On November 1st of 1971, we received a call from the Institution stating that Deloris Riddle wanted to talk to us. So on this call myself and Detective Downs returned to Pee Wee Valley Prison. Well, Deloris told us the same thing again.

We did not question her. She just come straight out with it and repeated the same as before. The only other thing that she did state, she said 'I would also just testify in Court against Roger that he did kill this Cop's woman.' So at this time we left. We did not question her again like I said. And also she said the Louisville Police, they had the knife that Roger killed both women with. * * * On November 29th, we received another call from Pee Wee Valley stating Deloris wanted to talk to us. At this time she started telling us the same thing. * * *"

The November 29 statement went into greater detail about the crime. Nonetheless, it had these things in common with the prior statements: the presence of police was requested by the accused; no questions were asked by police; the accused volunteered her statement.

"The requirements of warning and waiver imposed by *Miranda* v. *Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, apply only to custodial interrogation. The statements made . . . while appellant was admittedly in custody, were not made in response to any interrogation. These statements were freely, voluntarily and spontaneously given by the appellant. Such statements are admissible in evidence." *New* v. *State,* (1970) 254 Ind. 307 at 313-314, 259 N.E.2d 696 at 700. Put simply, statements made before an officer has a chance to warn an accused certainly are admissible. Such was the case here.

The Appellant also draws our attention to Ind. Code § 35-5-5-1 (Burns 1975) which requires that a trial judge conduct a hearing out of the presence of the jury to determine any issue of voluntariness before the admission of a confession into evidence. It is contended that the failure of the trial court here to conduct such a hearing is reversible error. This argument is without merit. The only issue presented to the trial court prior to the admission into evidence of the accused's oral statements was the absence of *Miranda* warnings. This issue was adequately heard by the trial court through arguments of counsel in the presence of the jury. Moreover, because the statements were admissible, any error which

would result by not having a hearing out of the presence of the jury would be harmless.

Also challenged are the written statements obtained from the Appellant on January 18, 1972, and March 3, 1972. It is asserted that these statements, as well as an oral statement obtained on January 25, 1972, were the result of repeated unlawful interrogations conducted in eliciting the oral statements already discussed here. This contention is not persuasive. The evidence revealed that there were no previous interrogations. The oral statements were admissible and could in no way taint the written statements in question.

The written statements are also challenged on the grounds that the State failed to show that the accused voluntarily waived her rights prior to giving those statements. Officer Parsons testified that the Appellant was read her rights prior to making the January 18 statement. It is pointed out by defense counsel that the officer could not remember whether he or the officer who accompanied him so advised the Appellant. The other officer testified that he had been occupied with the typewriter and had not done so. Read into evidence was a waiver of rights statement which had been signed by the Appellant. Defense counsel claimed this was of no value since the Appellant could not read. To rebut this, the State entered into evidence letters which bore the signature of the Appellant.

This court will not ordinarily overturn a trial court determination on voluntariness when that finding is based upon conflicting evidence. *Cooper* v. *State*, (1974) 261 Ind. 659, 309 N.E.2d 807. Such is the situation here. This court is not in a position to determine whether the Appellant could or could not read. The evidence in support of the trial court's finding that the Appellant's waiver was knowing and voluntary is supported by substantial evidence. This same principle applies regarding contentions that the Appellant did not possess sufficient mental capacity or competence to waive her rights. The evidence here con-

flicts. We do not think that the trial court abused its discretion in concluding that, under the totality of the circumstances, the State met its burden of showing that this defendant understood what she was signing.

The written statements were thus properly admitted into evidence. These statements, along with the oral statements already admitted, supplied sufficient evidence to allow the jury to decide this case. The Appellant's motion for a directed verdict was thus properly denied.

## III.

Admitted into evidence at the trials of both Appellants was testimony regarding a Louisville murder of which they were accused in Kentucky. The Appellants apparently admitted to this slaying of another woman and a Louisville policeman testified to that effect at the trials in Indiana. Also admitted into evidence were photographs of the victim of this Louisville crime. The admission of this evidence was improper and we must reverse on this basis.

In *Loveless* v. *State,* (1960) 240 Ind. 534, 166 N.E.2d 864, the general rule excluding from evidence proof of other crimes was summarized:

> "The general rule is that one crime cannot be proved in order to establish another distinct crime even though they be of the same kind. Such evidence is highly prejudicial. Moreover, a defendant is entitled to be informed specifically of the crimes charged and not come to trial in the dark and uninformed as to the nature of the evidence to be presented against him. 1 Ewbank's Indiana Criminal Law, Symmes Ed., § 384, p. 236; *Hergenrother* v. *State,* (1939) 215 Ind. 89, 18 N.E.2d 784; *Sylvester* v. *State,* (1933) 205 Ind. 628, 187 N.E. 669; *Fehlman* v. *State,* (1928) 199 Ind. 746, 161 N.E. 8. There are certain exceptions to this general rule. Among these are cases where a crime has certain peculiar characteristics connected with its commission so that it very reasonably identifies the person involved in the commission, as where, for example, a particular type of break-in is involved, or a particular tool used that is identifiable in each case, or where the person involved wears a particular identifying piece of clothing or headgear. *Smith* v. *State,* (1939) 215 Ind. 629, 21 N.E.2d

709; *Crickmore* v. *State*, (1938) 213 Ind. 586, 12 N.E.2d 266; *Zimmerman* v. *State*, (1921) 190 Ind. 537, 130 N.E. 235.

It is said in these cases that the purpose of the evidence is to identify the defendant where he denies his presence at the scene of the crime. Where the question of motive or intent has been denied and is made an issue, a series of similar transactions, even though they involve other crimes, may be shown to prove intent, motive or habit. This is particularly true where the charge involves fraud or deceit and the passing of bad checks and such similar practice. *Shneider* v. *State*, (1942) 220 Ind. 28, 40 N.E.2d 322. Where insanity is an issue in a criminal case, evidence pertinent to that issue is competent, even though it may incidentally show the commission of another offense. *Baker* v. *State*, (1921) 190 Ind. 385, 129 N.E. 468. Where the crime involves sexual acts, there seems to be a general exception to the rule that evidence of prior and subsequent sexual acts are admissible if they are not too remote. *Watts* v. *State*, (1950) 229 Ind. 80, 95 N.E.2d 570; *Kallas* v. *State*, (1949) 227 Ind. 103, 83 N.E.2d 769; *Borolos* v. *State*, (1924) 194 Ind. 469, 143 N.E. 360.

The rule is that where evidence is competent to prove any material issue on the trial, for example, the identity of the defendant, his intent, motive, habits or sanity which is in dispute, then evidence relevant to that issue is competent and the mere fact that evidence of other crimes may incidentally be revealed by such testimony does not exclude if for that reason alone. 240 Ind. at 539-540.

The evidence of other crimes in these appeals was admitted under the "identity" or *"modus operandi"* exception. Dean McCormick has described this exception as follows:

"To prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature." McCormick, Evidence § 190 at 449 (2d Ed. 1972).

The evidence in these cases did not establish a similarity in scheme or pattern of the Louisville murder to the one for which the Appellants were being tried. The only common features presented were that both women had been stabbed in the neck with what proved to

be the same knife. Nothing else was shown. No reconstruction of the Louisville crime was attempted. There was no description of the scene of that crime or the circumstances under which it was perpetrated to show the same pattern or scheme. The fact that the same knife was used would not in itself make the other crime admissible any more than the fact that the same defendant was involved in each.

We should add that Appellant Smith was not being tried for murder, but for being an accessory before and after the fact. As such, evidence of the commission of a prior murder is totally irrelevant. The *modus operandi* of the previous murder can in no way act as a "signature" to acts as an accessory before or after the fact in another crime. The accused has control over the devices or method in one crime and does not in the other.

"[W]hen the marks common to charged and uncharged offenses set them apart from other offenses of the same general variety, evidence of the uncharged offense is admissible on the issue of identity." *Cobbs* v. *State*, (1975) 264 Ind. 60, 338 N.E.2d 632 at 634. The marks of the offenses involved here—the use of a knife and wounds to the neck—are not sufficient to set them apart from other crimes of this general variety. While there may, in fact, have been more similarities, they are simply not in the records of these cases.

The judgment of the trial court is reversed and a new trial ordered in each case.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 348 N.E.2d 635.