**Tyrone PARKER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1078S245.

Supreme Court of Indiana.

Sept. 10, 1981.

John E. Leeney, Hammond, for appellant.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Count I, Murder in the First Degree, and Count II, Murder in the Perpetration of a Robbery, Ind.Code § 35–13–4–1(a) (Burns 1975), after trial by jury and sentenced to life imprisonment.[1] This direct appeal presents the following issues:

(1) Whether the trial court committed fundamental error in failing to instruct the jury concerning Defendant's failure to testify.

(2) Whether the trial court committed fundamental error in failing to instruct the jury on the effect of a prior conviction on a witness' credibility.

(3) Whether the trial court erred in admitting evidence of a prior unrelated crime.

(4) Whether the trial court committed fundamental error in admonishing and instructing the jury regarding the evidence of the prior unrelated crime.

(5) Whether the evidence is sufficient to support the conviction.

\*    \*    \*    \*    \*    \*

## ISSUE I

■ The defendant did not testify at his trial. He contends that the trial court erred in not giving a jury instruction, sua sponte, based upon Ind.Code § 35–1–31–3 (West 1978):

"Fourth. The defendant, to testify in his own behalf. But if the defendant does not testify, his failure to do so shall not be commented upon or referred to in the argument of the cause, nor commented upon, referred to, or in any manner considered by the jury trying the same; *and it shall be the duty of the*

court, in such case, in its charge, to instruct the jury as to their duty under the provisions of this section." (emphasis added).

Defendant relies on the emphasized portion of the statute and the decision in *Lakeside v. Oregon,* (1978) 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319, which held that the giving over objection of an instruction not to draw any adverse inference from the defendant's failure to testify did not violate the United States Constitution. The facts in *Lakeside* are inapposite to the case at bar, and *Lakeside* cannot be read as imposing an obligation on the trial court to instruct on the defendant's failure to testify.

■ In Indiana the choice of whether or not the trial court instructs the jury on the defendant's failure to testify belongs to the defendant. To preserve error on this issue, the defendant must request an instruction. *Hunt v. State,* (1973) 260 Ind. 375, 381, 296 N.E.2d 116, 120.[2] If the request is made, the trial court should advise the jury that it should not consider defendant's failure to testify. *Carter v. Kentucky,* (1981) 450 U.S. 288, 303–305, 101 S.Ct. 1112, 1121–22, 67 L.Ed.2d 241, 254; *Lucas v. State,* (1980) Ind., 413 N.E.2d 578, 583. If the trial court does not comply with the defendant's request, we will reverse the conviction, unless the State shows that the error was harmless beyond a reasonable doubt. *Lyda v. State,* (1979) Ind., 395 N.E.2d 776, 781. Conversely, the trial court may not give an instruction on the defendant's failure to testify over his timely objection. *Dooley v. State,* (1979) Ind., 393 N.E.2d 154, 156 (cases cited therein). Our decisions in this area do not support the defendant's assignment of error.

## ISSUE II

During direct examination, two of the State's witnesses admitted prior Robbery

---

1. The jury returned guilty verdicts on both counts. The trial court entered judgment and sentence on Count II. *Baldwin v. State,* (1980) Ind., 411 N.E.2d 605, 608 n.1.

2. In the past we have repeatedly required the defendant to request an instruction despite the

seemingly mandatory language of Ind.Code 35–1–31–3. *Felton v. State,* (1894) 139 Ind. 531, 541–42, 39 N.E. 228, 231; *Grubb v. State,* (1888) 117 Ind. 277, 279–80, 20 N.E. 257, 258; *Foxwell v. State,* (1878) 63 Ind. 539, 541–42.

convictions. Defendant tendered no instruction on this matter, and the trial court gave a standard instruction on determining the credibility of witnesses. Defendant now contends that the trial court should have given an instruction, sua sponte, relating the effect of a Robbery conviction upon a witness' credibility.[3]

We have held that it is not fundamental error to fail to give, sua sponte, a limiting instruction on the purpose of evidence of the defendant's involvement in prior crimes. *Perry v. State*, (1979) Ind., 387 N.E.2d 1315, 1317 (defendant's prior drug sales); *Accord Roberts v. State*, (1981) Ind.App., 419 N.E.2d 803, 808 (defendant's prior Robbery convictions). The logic of *Perry* applies with equal force to a limiting instruction regarding the effect of prior convictions upon the credibility of any witness. The trial court did not commit fundamental error. *Webb v. State*, (1972) 259 Ind. 101, 107, 284 N.E.2d 812, 815.[4]

### ISSUES III, IV & V

These issues are interrelated. We turn first to a review of the evidence. The jury returned verdicts of guilty of Murder in the First Degree and Murder in Perpetration of a Robbery. Ind.Code § 35–13–4–1(a) (Burns 1975) provided:

"Whoever kills a human being either purposely and with premeditated malice or while perpetrating or attempting to perpetrate rape, arson, robbery, or burglary is guilty of murder in the first degree * * *."

Thus the State had to show:

1) a killing of a human being; and
2) that the killing was done purposely with premeditated malice; or
3) that the killing was done in the perpetration of a Robbery; and
4) all the elements of Robbery. *Pruett v. State*, (1968) 250 Ind. 359, 365, 234 N.E.2d 501, 505.

On August 27, 1977 one L. Holmes heard gun shots sometime after midnight. He looked out his bedroom window and observed an automobile leave Noble Court, which is a circular street in front of his home in Gary. He returned to bed. When he awoke around 7:30 or 8:00 a. m., he again looked out the window and saw the dead body of the victim, Curtis Robinson. Robinson was unclothed, except for trousers and underpants, which were pulled down to his knees. He had died of two bullet wounds to the head.

On the evening of August 26, 1977 at about 11:30 p. m., Robinson had telephoned

---

3. Defendant suggests that the trial court should have given the instruction, which appears in *Black v. State*, (1972) 153 Ind.App. 309, 316, 287 N.E.2d 354, 358:

   "The credibility of a witness may be attacked by introducing evidence that the witness has been convicted of a crime. Evidence of this kind may only be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness."

   We disapproved this instruction in *Webb v. State*, (1972) 259 Ind. 101, 107, 284 N.E.2d 812, 814–15.

4. In his brief Defendant states that " * * * the jury was left uninformed of the impeaching effect of said convictions upon the credibility of the State's key witnesses." Defendant points out (without citing the relevant case of *Miller v. State*, (1977) 266 Ind. 461, 463, 364 N.E.2d 129, 130) that we would not uphold a conviction where the jury had not been instructed on the standard of proof and the defendant failed to object thereto or tender an instruction thereupon. He argues therefore, that the failure to

tender an instruction does not always invoke the waiver doctrine, and that each case must be examined to determine if the failure to instruct on some issue deprived the defendant of a fair trial. He then makes assertions which reflect on the credibility of the witnesses, who have the prior Robbery convictions, and concludes that " * * * the jury judged the credibility of their testimony by the same standards set forth by the trial court which applied to any other witness, saint or sinner."

Prior convictions do not have an impeaching effect on a witness' credibility as a matter of law, and it would be error to so instruct the jury. The trier of fact determines what effect to accord a witness' prior convictions in determining whether or not to believe that witness. From the quoted portions of his argument, we fear that the defendant misunderstands the law. If the meaning of the quoted argument had been incorporated in a tendered instruction, the trial court would have been correct in refusing the instruction, as these statements are not correct statements of the law.

his wife and told her that he would be home shortly. She had thought that he called from the liquor store, where he worked as a security guard. Mrs. Robinson testified that her husband had gone to work that day in her 1969 gold and black Pontiac automobile. Her husband owned a Llama .38 special handgun with brown grips.

Donna Collins, the cashier at the victim's place of employment, testified that Robinson left the liquor store no later than 10:00 p. m. on August 26, 1977 carrying a fifth of Seagram's Gin, which he had put on his account.

The defendant's connection to the crime was evidenced by the testimony of two witnesses, Leroy Carman and Danny Warren.

Warren testified that at 1:30 or 2:00 a. m. the defendant drove up to the house of Ernest Horde, where the witness and several other persons were drinking wine and beer. The defendant was driving a 1969 or 1970 brown Pontiac and was carrying a fifth of Seagram's Gin and a .357 revolver with a black or brown handle. When shown a picture of the gun, which Mrs. Robinson identified as depicting her husband's gun, Warren testified that he had never seen it before. Warren identified a photograph of a Pontiac automobile as depicting the car, which the defendant was driving. Mrs. Robinson identified the same photograph as depicting her Pontiac. Warren also stated that he did not remember if the defendant told him where he obtained the gun, at which point, the State invoked the *Patterson* rule [5] and questioned Warren about a statement that he had given to the police. Warren did not deny the substance of the statement, which was that the defendant had told him that a "dude" picked him up while he was hitchhiking and "pulled" a gun, but that he, the defendant, took the gun and the automobile away from him.

The defendant stayed at the Horde house all night, and when Warren awoke at 8:30 or 9:00 a. m. he observed the defendant and Leroy Carman arguing. The defendant was claiming that Carman owed him money

and drew a gun in response to Carman's drawing a knife. Both persons were disarmed, and Warren and two others walked to a liquor store.

Carman testified that he arrived at Horde's at about 11:00 or 11:30 a. m. and that, as he was leaving, the defendant drew a pistol, demanded his money, and threatened him. He reinforced the threat by announcing that he had recently killed an old man and left him at 23rd and Hendricks Streets. The victim's body was found in the 2300 block of Noble Court, about ninety (90) feet behind a church located at 23rd and Hendricks. Carman identified a photograph of a gun as depicting the gun that the defendant had drawn on him. The photograph was the same one that Mrs. Robinson had identified as depicting her husband's gun. The murder weapon was not recovered.

Upon information supplied by Warren, Mrs. Robinson's automobile was found near Ernest Horde's home. When the defendant was arrested he had a set of keys to the vehicle. The remainder of the evidence provides the basis for the assertions of error raised in Issues III and IV.

Over objection, David Waddell related an incident which occurred on August 8, 1977 at about 11:00 p. m. Waddell was driving in the area of 19th Avenue and Clark Road, which is in the same general vicinity as 23rd and Hendricks. He observed the defendant, with whom he was acquainted, and another person, and they asked him for a ride. The defendant got into the back seat, and the other person got into the front passenger seat. They drove around until the defendant told Waddell to stop, whereupon he drew a knife and took Waddell's wallet, while holding the knife at Waddell's throat. The wallet contained only sixty-five cents, and upon discovering this, the defendant stated that if he had a gun, he would blow Waddell's head off. The other person stated that he had a gun concealed. Defendant then slashed Waddell's throat and stabbed him several times in the chest

5. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482.

before he managed to escape. The defendant and his accomplice then drove away in Waddell's car.

■ Generally evidence of criminal activity other than that charged is inadmissible upon the question of guilt. However, such evidence may be admitted to show intent, motive, purpose, identification, or common scheme or plan. *Cobbs v. State*, (1975) 264 Ind. 60, 62, 338 N.E.2d 632, 633. The trial court held that the August 8, 1977 incident was relevant to the identity of the perpetrator of the instant crime.

The criteria for admissibility of the evidence of the robbery is whether proof of it tends to establish that the defendant was the perpetrator of the offense charged. This criteria is met if the two incidents are sufficiently similar to support an inference that the same person committed both, and if the defendant is shown to have perpetrated the attack on Waddell. *Randolph v. State*, (1977) 266 Ind. 179, 181, 361 N.E.2d 900, 901.

Waddell unequivocally identified the defendant as his assailant. We must therefore determine the similarity between these two offenses. The defendant contends that they are not sufficiently similar.

■ In both cases the perpetrator was hitchhiking and was picked up by his victim. Both events involved a Robbery as the motive and occurred late at night and in near proximity, both in time and neighborhood. In each case the perpetrator stole the victim's automobile. With respect to Waddell the perpetrator threatened to blow his head off; in the case at bar, the perpetrator carried out the threat. We think that the incidents were sufficiently similar. *Washington v. State*, (1981) Ind., 422 N.E.2d 1218 (No. 780 S 208); *Kimmel v. State*, (1981) Ind., 418 N.E.2d 1152, 1154–55; *Henderson v. State*, (1980) Ind., 403 N.E.2d 1088, 1090; *Bruce v. State*, (1978) 268 Ind. 180, 246–47, 375 N.E.2d 1042, 1077–78, *cert. denied*, (1978) 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662; *Randolph v. State, supra.*

Defendant's reliance on *Layton v. State*, (1966) 248 Ind. 52, 221 N.E.2d 881 and *Riddle v. State*, (1976) 264 Ind. 587, 348 N.E.2d 635 is misplaced. In *Riddle* the only similarity in the record between the two homicides was that the victims were stabbed in the throat with the same knife. There was nothing else to connect the defendant with the uncharged homicide. In *Layton* the defendant was charged with premeditated murder and murder in perpetration of a robbery of the same victim. The uncharged offenses consisted of armed robberies of service stations and a church. We found no characteristics or circumstances in common.

But for the fortuitous survival of David Waddell, the uncharged offense would have been murder. Additionally, the liquor store clerk testified that if Robinson had had money, he would have paid for the bottle of gin rather than put it on his account. This occurred around 10:00 p. m., and within two hours, the victim was dead. We can infer that when the defendant attempted to rob Robinson and discovered that he had little or no money, he became angry and shot his victim in the head. In like fashion Waddell testified that the defendant had stated his desire to blow away Waddell's head immediately after discovering that Waddell's wallet contained only sixty-five cents. The combined weight of all the circumstances, as related above, convinces us that the trial court did not err in admitting Waddell's testimony.

The defendant next contends that the trial court committed fundamental error in admonishing the jury after Waddell's testimony as follows:

"Now, ladies and gentlemen, the Court now has admitted into evidence testimony relating to an alleged robbery occurring sometime prior to the charges now before you. The Defendant is not on trial for that offense, but he is on trial for the offense alleged to have occurred on August 27, 1977.

"Now, in your deliberation you may consider the alleged prior offense as it tends to make the alleged events of August 27th more or less probable. But you are to arrive at your verdicts based only on the events as you find them to have

occurred on the 27th day of August and on no other date."

 Without objection the trial court gave a final instruction, which in substance repeated this admonition. Prior to Waddell's testimony, the trial court asked defense counsel if he wanted a limiting instruction at the end of Waddell's testimony, and defense counsel replied: "I would request that such an instruction be given immediately after such evidence is tendered." The defendant cannot complain that the trial court granted this request; and inasmuch as Defendant did not object to the giving of the instruction, he has preserved nothing for appeal. Ind.R.Crim.P. 8(B).

We turn finally to the defendant's sufficiency claim. He contends that there was insufficient evidence to show that the perpetrator's intent at the time of the homicide was to commit a Robbery. He cites *Dunn v. State*, (1973) 260 Ind. 142, 293 N.E.2d 32 and *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657, and claims that the evidence here is more deficient than in the cited cases where we reversed murder convictions. We do not agree. While it is possible, as the defendant argues, that, "One could just as easily infer and speculate from the evidence presented by the State that some unknown perpetrator had shot the victim, for any number of reasons unrelated to robbery, and fled the scene," and "that later some other person or persons stripped the body.", the circumstances are highly implicative. The defendant possessed the victim's automobile (and possibly his bottle of gin) shortly after the victim's death. The defendant admitted that he had killed a man and left the body at a location, where the victim's body was found. The jury might also find from Carman's testimony that the defendant possessed the victim's gun shortly after the homicide. Lastly, the jury could infer that the defendant exacted a high price for his robbery victim's impecunity.

The jury is the sole judge of whether an explanation of the circumstances upon some other theory is sufficiently strong to raise a reasonable doubt of guilt.

*Finch v. State*, (1944) 222 Ind. 633, 638, 56 N.E.2d 851, 854 (cases cited therein). We find that the evidence, though circumstantial, was sufficient. *See Finch v. State, supra; Smith v. State*, (1926) 198 Ind. 156, 152 N.E. 803.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, ·C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.