Jerry HENDERSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 584S161.

Supreme Court of Indiana.

Feb. 28, 1986.

Charles A. Beck, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

After trial by jury, appellant Jerry Henderson was convicted of burglary, a class B felony, and of theft, a class D felony. He was sentenced to concurrent prison terms of seventeen years and two years, respectively. He raises three issues in this direct appeal:

(1) Whether the identification evidence is sufficient to sustain his convictions;

(2) Whether the trial court improperly admitted evidence of an uncharged crime; and,

(3) Whether the trial court provided a sufficient statement of reasons for enhancing his burglary sentence.

We affirm.

These are the facts which tend to support the trial court's judgment. On January 17, 1983, Kimberly Kennedy was looking out the second floor window of her house. She saw Jerry Henderson exit the front door of John Regich's house carrying a television set. Kennedy observed appellant walk down the street in front of her house and place this television in his car, which was parked in an alley two or three houses from the victim's residence. Kennedy gave Officer Robert Dutton a detailed description of the burglary suspect and the vehicle. She described the car as a gold, four-door, Ford LTD with a license plate number of 99 H 8889. A 1974 Ford which had a license plate number of 99 T 8889 was registered to a Jerry Henderson. Kennedy picked appellant from a police photo-

graphic array and later identified him in court as the man she observed on January 17th.

John Regich's house was secure when he left on the morning of January 17th. When he returned home, he found that his bathroom window, previously nailed shut, was now open. Three television sets, two small transistor radios, two pieces of jewelry, and some silver dollars were missing.

## I. Identification Evidence

Appellant argues that the identification evidence is insufficient to sustain his convictions. His contention that he was never identified as the perpetrator of the crimes is based upon the following two claims:

(1) The eyewitness told the police that she saw a person called Pee Wee Peoples leave the victim's residence carrying a television set, and

(2) The eyewitness identified a photograph of Mr. Peoples and stated that this was the man whom she saw leaving from the victim's house.

This Court neither weighs the evidence nor judges the credibility of witnesses when it reviews the sufficiency of the evidence. Rather, we consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If a rational trier of fact could infer beyond a reasonable doubt that the accused was the perpetrator of the crimes, the judgment will be affirmed. *Taylor v. State* (1985), Ind., 479 N.E.2d 1310.

Kimberly Kennedy did testify that she told an officer who was investigating the burglary that she thought the man's name was Pee Wee Peoples. Upon further examination Kennedy explained that she knew the burglar's name but could not recall it when she talked to this officer. However, she believed that Henderson was related to the Peoples' family. Shortly thereafter she remembered that his name was Jerry Henderson and that he was not related to the Peoples. She recognized Henderson and was finally able to refer to him by name because the two had lived in the same neighborhood for six or seven years.

Kennedy also identified Defendant's Exhibit A as a photograph of Jerry Henderson and testified that this was the man whom she saw exit from Regich's house. A hearing was held on the admissibility of this exhibit after the State completed its case in chief. Defense counsel maintained that she obtained this photograph from the Indianapolis Police Department and that it depicted Pee Wee Peoples (proper name William Beatrice Peoples, Jr.). The photograph was admitted and passed among the jury. The defense then rested. The photograph was never identified by any witness, either during Kennedy's testimony or upon its admission, as a photograph of Pee Wee Peoples. As best we can estimate, counsel wished the jury to compare Exhibit A with a photograph of Henderson which Kennedy chose from the array of photographs shown her by the police. At most, this is an effort to cast doubt on the credibility of the witness, which is within the province of the jury to assess.

The evidence recited in the statement of facts is sufficient to sustain appellant's convictions.

## II. Evidence of an Uncharged Crime

Appellant argues that evidence of his subsequent criminal activity was erroneously admitted during the State's case in chief. He maintains that the State did not sustain its burden to show "that the different criminal actions were so similarly conducted that the method of conduct can be considered akin to the accused's signature." The State sought admission of the controverted testimony either as evidence of a common scheme or plan or to show identity.

Alonzo Bellmar was the victim of an uncharged crime which was committed on January 18, 1983. Bellmar returned home and was in his garage when someone exited the side window. Both entry and exit were made through this window. He saw a man running from his house and he proceeded to follow. This man was running toward a tan Mercury or Ford car which

was parked at a restaurant located four houses away from the Bellmar residence. Having lost sight of the man, Bellmar returned to the car and wrote down the license plate number. The number was 99 T 8889 and, as it turned out, this plate was registered to a Jerry Henderson. Two days later Bellmar identified appellant from a police photographic array. He also positively identified Henderson in court as the man he chased from his residence on January 18, 1983.

Trial testimony of the present charged crime indicates that entry was gained through a window and exit made by the front door, a gold car was parked two or three houses away from the victim's house, and the eyewitness recorded a license plate number of 99 H 8889.

 Evidence of crimes which are independent and distinct from the charged crime is generally inadmissible to prove either the propensity to commit crime or guilt of the charged crime. However, in appropriate cases such evidence is admissible to prove an accused's identity, knowledge, intent, motive, or to demonstrate a common scheme or plan. *Malone v. State* (1982), Ind., 441 N.E.2d 1339. Evidence of the uncharged crime is admissible to establish a common scheme or plan when the means used to commit the charged crime and the uncharged crime were nearly identical. Generally, the manner of committing each crime must be so unusual or distinctive as to constitute a "signature".

*Williams v. State* (1985), Ind., 481 N.E.2d 1319. Evidence of the uncharged crime is also admissible under the identity exception when identity is an issue and the uncharged crime is "connected with the crime charged in such a way that proof of them naturally tends to identify the defendant as the one who committed the charged crime." *Cobbs v. State* (1975), 264 Ind. 60, 338 N.E.2d 632, 634. Testimony pertaining to the uncharged crime "must possess substantial probative value and must be so specifically and significantly related to the charged crime in time, place and circumstance as to be logically relevant" to one of

the acceptable purposes. *Hobbs v. State* (1984), Ind., 466 N.E.2d 729, 733.

 The evidence in this case does not establish a similarity in scheme or plan in the commission of the crimes which would set them apart from other burglary offenses. The mere repetition of crimes of the same nature is insufficient. *Riddle v. State* (1976), 264 Ind. 587, 348 N.E.2d 635. However, identity was at issue here, and the similarity of the license plate number which was recorded by each eyewitness is significantly and logically related to identification. The testimony of the uncharged crime was properly admitted.

III. Statement of Aggravating Factors

Appellant argues that the trial court did not sufficiently state the aggravating factors which warranted an enhancement of his burglary sentence.

 The trial court determined that the following aggravating factors warranted enhancing the presumptive burglary sentence of ten years by an additional seven years:

(1) defendant has a history of criminal activity,

(2) defendant is in need of correctional rehabilitative treatment that can only be provided by his commitment to a penal facility, and

(3) imposition of any reduced sentence for these offenses would depreciate the seriousness of the crimes that were committed.

The trial court's statement of its basis for imposing an enhanced sentence enable this Court to review the lower court's sentencing discretion. The statement must contain the following three elements: (1) it must identify all of the significant mitigating and aggravating circumstances, (2) it must state the specific reason why each circumstance is considered to be mitigating or aggravating, and (3) the court must evaluate and balance the mitigating circumstances against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating

circumstances. *Robinson v. State* (1985), Ind., 477 N.E.2d 883. The purposes for requiring a specific statement of reasons for enhancing a sentence are twofold. First, it insures the judge considered only proper grounds when imposing sentence and thus safeguards against the imposition of sentences which are arbitrary or capricious. Second, it enables the appellate court to determine the reasonableness of the sentence imposed. *Page v. State* (1981), Ind., 424 N.E.2d 1021.

The trial court's statement of reasons for imposing an enhanced sentence do not satisfy the statutory mandate to provide a detailed statement of reasons rather than general or conclusory assertions which tract the language of the statute. Ind.Code § 35-38-1-7. However, the judge took into consideration the presentence report before he imposed sentence. The judge's statement indicates that he did engage in the evaluation and balancing process, but did not sufficiently articulate the information which he considered. The information contained in the presentence report shows that Henderson did have a history of criminal activity. Incremental increases in the severity of the penalties imposed during appellant's history of offenses have not deterred him from committing criminal acts. When the record indicates that the trial judge engaged in the evaluative processes but simply did not sufficiently articulate his reasons for enhancing sentence and the record indicates that the sentence imposed was not manifestly unreasonable, then the purposes underlying the specificity requirement have been satisfied. *Carman v. State* (1985), Ind., 473 N.E.2d 618; *Beasley v. State* (1983), Ind., 445 N.E.2d 1372. Moreover, it appears from the record that Henderson had suggested to the trial judge that a sentence of seventeen years would be consistent with a plea bargain struck in the resolution of another pending case. Under these circumstances there is little reason to order a remand.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and DICKSON, JJ., concur.

PIVARNIK, J., concurs in result.